Michael LIXANDROIU, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 02–3285.

United States Court of Appeals, Federal Circuit.

Feb. 12, 2003.

Before SCHALL, BRYSON, and LINN, Circuit Judges.

## DECISION

PER CURIAM.

Michael Lixandroiu petitions for review of the decision of an arbitrator that denied the grievance of his removal from his position with the Immigration and Naturalization Service ("INS" or "agency"). We *affirm.*

## DISCUSSION

### I.

INS removed Mr. Lixandroiu from his position as an Immigration Inspector for six different offenses, the most serious of which was the alleged unlawful use of the Treasury Enforcement Communications System II ("TECS"). TECS allows a user to obtain criminal background and other personal information about a person. INS's removal decision was timely grieved and the matter proceeded to arbitration. The arbitrator sustained two of the six charges against Mr. Lixandroiu: (1) the charge relating to improper TECS use based on seven of the twelve specifications in the charge, and (2) the charge of insubordination. The arbitrator found that INS had failed to prove the remaining four charges against Mr. Lixandroiu. Although the arbitrator sustained the charge of insubordination, he concluded that charge was insufficient to support termination. However, based on the seriousness of the charge relating to TECS use and the fact that Mr. Lixandroiu had improperly used TECS in the past, the arbitrator denied the grievance and sustained the removal. Mr. Lixandroiu has timely petitioned for review of the arbitrator's decision.

### II.

We review an arbitrator's decision under the same standard of review that we employ when we review a decision of the Merit Systems Protection Board. *See*

*Dunn v. Dep't of Veterans Affairs,* 98 F.3d 1308, 1311 (Fed.Cir.1996). That standard requires us to affirm unless we find the decision to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); *see Kewley v. Dep't of Health & Human Servs.,* 153 F.3d 1357, 1361 (Fed. Cir.1998). The decision of the arbitrator in this case is none of these.

### III.

Mr. Lixandroiu makes several arguments on appeal. We address them in turn.

A. Mr. Lixandroiu argues that the arbitrator improperly considered certain evidence that was obtained during an interview in which he was entitled to, but was denied, union representation. Specifically, he notes that several of the specifications relating to the charge of improper TECS use are based upon his using TECS to obtain information about individuals with whom he was somehow associated. He asserts that the only way the agency knew that these people were his "associates" was through information that was obtained during the interview. He then argues that there is no information anywhere in the record that shows that the agency would have brought these specifications against him absent the information that was obtained during the interview. We disagree.

■ In his decision, the arbitrator addressed the issue of whether the agency relied on information obtained during the interview:

Specifications 5, 6, 7, 8, 9, 10, and 11 all involve names run through TECS by the Grievant and raise a question of admissibility. Each specification also includes

information regarding the relationship of the named individual to the Grievant, and it was clearly derived from the investigatory interview.

Based on these facts, the arbitrator concluded that "these allegations must be excluded" and that the agency may "rely only on that data it acquired apart form the Grievant's interview." Nevertheless, based on other information in the record, he concluded that the specifications were not excludible:

[The agency] had information in advance of the interview that none of the cited names had "entered the country" on the date their name was entered, and it had TECS data to show that the Grievant's i.d. and password were used to enter the names. It did not know the relationship, if any, between the Grievant and the cited individuals except through the answers he gave during the investigatory interview. It is equally clear, however, that the investigatory information was not necessary nor material to the Agency's charges. Insofar as it was concerned, grounds for discipline existed because the names were not run in connection with any primary or secondary activities. Therefore, the affected specifications are not excludible....

In view of these facts, we do not agree with Mr. Lixandroiu that the arbitrator improperly considered the evidence in question.

■ B. Mr. Lixandroiu contends that the arbitrator improperly concluded that he had a prior record of discipline and improperly relied on that record in sustaining his removal. We disagree.

Under *Douglas v. Veterans Admin.,* 5 MSPB 313, 5 M.S.P.R. 280, 305 (1981), a number of factors, including past disciplinary record, may be considered in determining the appropriateness of a penalty. Mr. Lixandroiu had received counseling

from his immediate superior on two occasions in July 1991 for two separate violations of the agency's policy on the use of TECS. In fact, the arbitrator stated: "Having been twice warned against misuse of TECS there is no persuasive reason to believe corrective action in this case, even of a serious nature, would change the Grievant's attitude toward TECS use." Under these circumstances, we cannot say that arbitrator improperly concluded that Mr. Lixandroiu had a prior record of discipline or that the arbitrator improperly relied on that prior record in sustaining his removal.

C. Mr. Lixandroiu asserts that the arbitrator erred in his consideration of the *Douglas* factors and in not mitigating the penalty of removal after four of the six charges against him were not sustained. We again disagree with Mr. Lixandroiu. Although the arbitrator did not specifically list the *Douglas* factors, he did properly consider the relevant factors.

■ As for Mr. Lixandroiu's argument that the arbitrator erred by not mitigating the penalty of removal after some of the charges against him were not sustained, we have stated that "[w]hen the Board sustains fewer than all of the agency's charges, the Board may mitigate to the maximum reasonable penalty so long as the agency has not indicated either in its final decision or during proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges."

*Lachance v. Devall,* 178 F.3d 1246, 1260 (Fed.Cir.1999). In this case, the agency's final decision stated that "any one of the [six] reasons standing alone ... [is] serious enough to warrant [Mr. Lixandroiu's] removal from the Service." In addition, there is no evidence in the record suggesting that the agency desired the imposition of a lesser penalty on fewer charges.[1] Accordingly, the arbitrator did not err by not mitigating the penalty of removal based on the fact that he had not sustained all of the charges against Mr. Lixandroiu.

■ D. Finally, Mr. Lixandroiu argues that the arbitrator erred in not drawing a negative inference from the fact that INS failed to call the agency's deciding official as a witness. This argument is without merit. The arbitrator noted that Mr. Lixandroiu rested his case after calling two witnesses. He further noted that Mr. Lixandroiu did not make any inquiry as to whether the deciding official was going to be called, did not request that the deciding official be subpoenaed for purposes of his case, and did not protest that he had been misled by the agency into believing that the agency was going to call the deciding official as a witness. The arbitrator also found that, at the conclusion of the hearing, Mr. Lixandroiu was asked if he had any rebuttal witnesses, and he said he did not without any claim of prejudice or a request to compel the deciding official's presence as a witness. Under these circumstances, we cannot say that the arbi-

---

1. Mr. Lixandroiu points us to an e-mail from the deciding official of the agency and argues that this e-mail shows the agency's intent to impose a lesser penalty on fewer charges. The arbitrator refused to admit the e-mail into evidence, noting that the e-mail was neither presented at the hearing nor was the subject of a post-hearing request to reopen the record. He stated that "no arbitrator [would] admit post-hearing evidence by way of an attachment to a written closing argument."

Regardless of whether this e-mail shows the agency's intent to impose a lesser penalty on fewer charges, we cannot say that the arbitrator clearly abused his discretion by not admitting the e-mail into the record. *See Curtin v. Office of Pers. Mgmt.,* 846 F.2d 1373, 1378 (Fed.Cir.1988) (stating that we will not overturn a decision on the basis of a procedural error "unless an abuse of discretion is clear and is harmful").

trator erred in not drawing a negative inference when the INS failed to call the deciding official as a witness. *See Bufco Corp. v. Nat'l Labor Relations Bd.,* 147 F.3d 964, 971 (D.C.Cir.1998) (noting that a negative inference is unwarranted where the party requesting the inference could have called the witness itself); *Shustyk v. United States Postal Serv.,* 32 M.S.P.R. 611, 615 (1987), *aff'd,* 831 F.2d 305 (Fed. Cir.1987) (noting that "[t]he Board has not permitted a negative inference to be made ... against a party who simply fails to call its own non-hostile witnesses at the hearing" (citation omitted)).

For the foregoing reasons, the decision of the arbitrator is affirmed.