NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3020

CHRISTOPHER EFFGEN,

Petitioner,

v.

DEPARTMENT OF COMMERCE,

Respondent.

_____

DECIDED:  May 4, 2005

_____

Before NEWMAN, BRYSON, and GAJARSA, <u>Circuit Judges</u>.

PER CURIAM.

Christopher Effgen seeks review of the Merit Systems Protection Board ("Board") decision dismissing his Individual Right of Action ("IRA") appeal under 5 U.S.C. § 1221(a) (2000) for failure to state a claim upon which relief can be granted.  <u>Effgen v. Dep't of Commerce</u>, SE-1221-03-0233-W-1 (M.S.P.B. Dec. 12, 2003) (Initial Decision).  We <u>affirm</u>.

BACKGROUND

The Department of Commerce, Bureau of the Census ("Agency") sought applicants for employment in the 520 local offices it opened for the purpose of conducting Census 2000. Prior to an applicant being hired, in addition to the standard pre-employment test, the Agency required as part of the application process that all applicants complete the U.S. Department of Justice, Immigration and Naturalization Service ("INS") Employment Eligibility Verification Form (the "I-9 form"). The Agency also conducted background checks using the Decennial Applicant Name Check ("DANC") system to verify that the applicants did not have criminal records.

On February 1, 2000, Effgen applied for a position in the Anchorage, Alaska office in connection with Census 2000. Effgen took the standard pre-employment test and submitted an I-9 form; however, he left the I-9 form incomplete because he believed that the I-9 requirement was not a lawful request for information. An Agency employee administering the application process informed Effgen that an employment application would not be accepted without a completed I-9 form. As a result, Effgen contacted the Local Census Office Manager ("LCO") alleging that his application for employment had been illegally revoked. The LCO advised Effgen of the Agency's application process and informed him that he was ineligible for employment for his failure to submit proofs of identity in accordance with the I-9 form.

Subsequent to the conversation between the LCO and Effgen, in a letter dated March 4, 2000, the Agency notified Effgen that he would not be considered for any Census 2000 positions until a completed I-9 form was signed and notarized. According to the letter, failure of Effgen to respond within three weeks would result in an inactive

employment application. Rather than respond to the Agency in the allotted time, on March 30, 2000, Effgen emailed Representative Don Young (Alaska) to complain about the Agency's practice of requiring a complete I-9 form from applicants. Representative Young submitted Effgen's concerns to Kenneth Prewitt, Director of the Bureau of the Census. In an undated letter from Prewitt to Young, a copy of which was also forwarded to the office of Senator Ted Stevens (Alaska), Prewitt summarized the Agency's application process as follows:

> The Census Bureau has chosen to have applicants complete the Form I-9, along with other application material, at the time of testing. All applicant folders are reviewed for completion and for the suitability of the applicant. Information from the application materials is entered into an automated personnel system, which forwards information to the Decennial Applicant Name Check system to obtain hiring clearance. . . . [Because of the] massive amount of administrative work [that] must be completed in a very short time frame, . . . it is imperative that the Census Bureau know who is eligible and suitable for employment at the time the selection process begins. . . . Requesting a prospective employee to complete the I-9 form is an efficient, reasonable method for determining eligibility.

Prewitt reiterated that "[c]ompletion of the required Form I-9, passing the census test, and having a favorable result to his background investigation would have qualified Mr. Effgen for employment." Effgen was cleared for employment after the completion of his criminal background check using the DANC system; however, on April 21, 2000, the Agency declared Effgen ineligible for employment for his failure to complete the I-9 form.

More than two years later, on December 30, 2002, Effgen filed a complaint with the Office of Special Counsel ("OSC") alleging that the Agency unlawfully took

personnel actions against him in violation of the Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16 (codified in scattered sections of 5 U.S.C.) ("WPA"), when it declared him ineligible for employment because of his failure to complete an I-9 form. Specifically, Effgen contended that "[t]he Census Bureau required applicants for employment [to] complete DOJ/INS Form I-9. I indicated that this was illegal, refused to complete the form and my right to apply for employment was revoked." According to Effgen, his disclosures were protected under the WPA, and the Agency's revocation of his employment application for failure to complete the I-9 was improper. After the OSC's final determination that no WPA violation had occurred, Effgen was notified that he had a right to seek corrective action from the Board through an IRA appeal. See 5 U.S.C. § 1221(a) (2000). Effgen timely filed his IRA appeal to the Board.

In an order dated June 24, 2003, the administrative judge ("AJ") resolved several discovery matters and found that Effgen satisfied the Board's jurisdictional prerequisites for an IRA appeal. See Willis v. Dep't of Agric., 141 F.3d 1139, 1142 (Fed. Cir. 1998) (To maintain an IRA appeal under the WPA, the petitioner must establish that the Board has jurisdiction by making non-frivolous allegations that (1) he engaged in whistleblowing activity by making a disclosure protected by 5 U.S.C. § 2302(b)(8); (2) the agency took or threatened to take a personnel action as defined by 5 U.S.C. § 2302(a); and (3) he has exhausted his administrative remedies by seeking corrective action from the OSC.). Because the AJ concluded that Effgen had made non-frivolous allegations that his disclosures to the LCO, Senator Stevens, and Representative Young were protected under 5 U.S.C. § 2302(b)(8); that his protected disclosures were contributing factors in the Agency's failure to take a personnel action defined by

05-3020                                                    4

5 U.S.C. § 2302(a); and that his remedies were exhausted before the OSC, the AJ determined that Effgen was entitled to a hearing on the merits. In addition, the AJ specifically found that Effgen's allegations relating to the propriety of conducting criminal background checks using the DANC system, without more, were not personnel actions within the scope of 5 U.S.C. § 2302(a), and thus were not subject to review. Based on the AJ's findings, the Board's jurisdiction was limited to "whether [Effgen] made protected disclosures to the agency's [LCO] and to Senator Stevens and Representative Young that were a contributing factor in the agency's failure to appoint him to a Census 2000 position and whether he exhausted his remedies before the OSC concerning those matters."

On November 5, 2003, Effgen waived his right to a hearing and moved for a summary adjudication of his appeal. On December 12, 2003, the AJ issued an initial decision dismissing Effgen's IRA appeal for failure to state a claim upon which relief can be granted. Because it was not in dispute that an appointment to a Census 2000 position was a personnel action as defined in 5 U.S.C. § 2302(a), or that Effgen exhausted his remedies with the OSC, the AJ assumed without deciding that Effgen established by preponderant evidence that he made a protected disclosure that was a contributing factor in the Agency's decision to refuse him employment, and proceeded to address the Agency's affirmative defense. Subsequently, the AJ found that the Agency proved by clear and convincing evidence that it would have taken the same personnel action absent the protected disclosure.

In determining whether the Agency met its burden of showing that it would have taken the same personnel action in the absence of whistleblowing, the AJ considered

the factors articulated in Caddell v. Department of Justice, 66 M.S.P.R. 347, 351 (1995),

affirmed 96 F.3d 1367 (Fed. Cir. 1996):

> the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

Upon considering the Caddell factors, the AJ found that "the evidence in support of its action not to offer employment to [Effgen] was strong and that it took the same action against applicants who were not whistleblowers but were similarly situated." In reaching his conclusion, the AJ evaluated policy statements, a blank I-9 form, INS publications about the I-9 form, and documents related to Effgen's employment application. Most persuasive to the AJ was the sworn declaration of Sonya Gail Reid ("Reid"), a special assistant to the chief of the Agency's human resources division whose office coordinated the policies and procedures governing the hiring of more than 800,000 employees from more than 3,500,000 employment applications for Census 2000. According to Reid, the I-9 form was a requirement imposed at the application stage "to save time and resources given the magnitude of the operation." Reid further stated that it was standard procedure nationwide that if an applicant failed to complete the I-9 form, the applicant was deemed ineligible for employment and that LCOs lacked the authority to override the requirement. In addition, the computer system that the Agency used to process applications was programmed to require the I-9 form as one step towards eligibility. Moreover, Reid noted and Effgen conceded that of the over 3,500,000 applications for temporary employment the Agency processed, no applicant was found

eligible for employment who failed to complete the I-9 form. Finally, Reid stated that the criminal background check conducted using the DANC system is a distinct requirement separate from the requirement to submit a completed I-9 form. She explained that it was possible for an applicant to be cleared for employment as a result of the criminal background check but still be found ineligible for employment if the applicant's I-9 form was incomplete.

Effgen filed a petition for review with the Board, asking the Board to reconsider the AJ's initial decision. The Board denied Effgen's petition for review, concluding that there was no new, previously unavailable evidence, and that the AJ made no error in law or regulation that affected the outcome. Accordingly, the initial decision of the AJ became final on August 16, 2004. Effgen timely appealed to this court and we have jurisdiction under 28 U.S.C. § 1295(a)(9).

DISCUSSION

We must affirm the Board's decision unless we determine that it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. See 5 U.S.C. § 7703(c) (2000); Killeen v. Office of Pers. Mgmt., 382 F.3d 1316, 1320 (Fed. Cir. 2004).

The WPA prohibits a personnel action with respect to an employee because of "any disclosure of information by [such] employee . . . which the employee . . . reasonably believes evidences (i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and

specific danger to public health or safety . . . . " 5 U.S.C. § 2302(b)(8). Under the WPA, if an employee shows by a preponderance of the evidence that he made a protected disclosure, that subsequent to the disclosure he was subject to a personnel action, and that the disclosure was a contributing factor to the personnel action taken against him, corrective action may be ordered unless the agency proves by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. See 5 U.S.C. § 1221(e).

Effgen argues that the AJ acted improperly when he proceeded to address the Agency's affirmative defense after he "assumed without deciding" whether Effgen established by preponderant evidence that he made a protected disclosure that was a contributing factor in the Agency's decision to refuse him employment. Effgen alleges that he did not receive a fair hearing because the AJ failed to consider his reasonable belief with respect to the propriety of the Agency's alleged prohibited personnel practices. The determination that Effgen is requesting—an independent review of the facts to show that he met his burden of proof—is unnecessary, and Effgen's contention lacks merit. The AJ in assuming without deciding whether Effgen met his burden under the WPA gave credence to Effgen's argument, so that he could proceed to evaluate the Agency's affirmative defense. Such a decision by the AJ was not arbitrary, capricious, an abuse of discretion, not in accordance with law, or obtained without procedures required by law, rule, or regulation having been followed.

Moreover, in rejecting Effgen's claim on the merits, the AJ correctly considered the requisite Caddell factors to determine whether the Agency had shown by clear and convincing evidence that it would have removed Effgen even in the absence of any

05-3020                          8

disclosures. See Caddell, 66 M.S.P.R. at 351. To the extent that Effgen is challenging the strength or weight of the evidence that the Agency presented for its affirmative defense, his argument also must fail. The Board properly evaluated the evidence submitted. Its decision that the evidence in support of the Agency's action not to offer employment to Effgen was strong, and its finding that Reid's declaration was persuasive was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, especially in light of Effgen's concession that no applicant was found eligible for employment who failed to complete the I-9 form.

Effgen also attempts to characterize the Agency's requirement of a complete I-9 as part of a scheme to conduct illegal background checks. This argument was in front of the AJ, and he specifically excluded this allegation from the scope of the Board's jurisdiction. See Effgen v. Dep't of Commerce, SE-1221-03-0233-W-1 (M.S.P.B. June 24, 2003) (Order) ("The Board does not have jurisdiction to review claims other than those involving retaliation for whistleblowing, . . . taking or failing to take, or threatening to take or fail to take, a personnel action because of a protected disclosure. . . . I find that conducting a name-based criminal background check, without more, is not a personnel action."). Because a party in a Board proceeding must raise his issues before the AJ, and Effgen was precluded from raising his argument because the Board did not have jurisdiction over this particular claim as a result of the limited scope of an IRA appeal, Effgen's argument that the Agency was conducting illegal background checks is unavailable for review by this court. See Bosley v. Merit Sys. Prot. Bd., 162 F.3d 665, 668 (Fed. Cir. 1998).

Effgen asserts several additional arguments related to the AJ's management of discovery, all of which are without merit. Procedural matters relative to discovery fall within the sound discretion of the Board and its officials. Curtin v. Office of Pers. Mgmt., 846 F.2d 1373, 1378 (Fed. Cir. 1988). Absent a showing of abuse of such discretion, a discovery decision will not be overturned. Id. Because it is not clear what Effgen contests about the discovery matters and he does not provide any credible evidence or articulate how the AJ abused his discretion, this court declines to find an abuse of discretion.

## CONCLUSION

We find that the Board's decision dismissing Effgen's IRA appeal for failure to state a claim upon which relief can be granted is supported by substantial evidence. The Board's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, we affirm.

No costs.