NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**ROSANNE WOODROOF,**
*Petitioner*

**v.**

**DEPARTMENT OF COMMERCE,**
*Respondent*

_____

2024-2139

_____

Petition for review of the Merit Systems Protection Board in No. DC-0432-15-05-85-C-1.

_____

Decided:  November 6, 2025

_____

ROSANNE WOODROOF, Warrenton, VA, pro se.

MATTHEW JUDE CARHART, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY, BRETT SHUMATE.

_____

Before MOORE, *Chief Judge*, TARANTO, *Circuit Judge*, and CHUN, *District Judge*.[1]

PER CURIAM.

Rosanne Woodroof was employed by the Office of Inspector General (OIG) at the U.S. Department of Commerce (agency) until the agency terminated her employment in 2015. She appealed her removal to the Merit Systems Protection Board (MSPB or Board). In 2016, she and the agency entered into a settlement agreement, which included a confidentiality provision, and the Board dismissed the appeal based on the agreement. In 2017, in a separate matter brought by another complainant against Commerce, Ms. Woodroof testified as a witness called by the complainant. At the hearing in that matter, Ms. Woodroof answered questions about her pre-removal performance-improvement (PIP) plan, and Commerce, on cross-examination, asked her questions about those plans and her removal.

In 2018, Ms. Woodroof petitioned the Board to enforce the 2016 settlement agreement, arguing that the agency violated the confidentiality provision during its cross-examination by asking questions regarding those topics. As relevant to Ms. Woodroof's appeal before us, Ms. Woodroof also requested discovery and a status conference. The Board's administrative judge did not grant the two process requests and denied Ms. Woodroof's enforcement petition. *Woodroof v. Department of Commerce*, No. DC-0432-15-0585-C-1, 2019 WL 917395 (M.S.P.B. Feb. 19, 2019) (*Initial Decision*); J.A. 12–18. The full Board vacated the *Initial Decision* but also denied the petition for enforcement, finding no material breach of the agreement based on a

---

[1] Honorable John H. Chun, District Judge, United States District Court for the Western District of Washington, sitting by designation.

provision permitting disclosure to the Board and on Ms. Woodroof's voluntary testimony about her PIPs. *Woodroof v. Department of Commerce*, No. DC-0432-15-0585-C-1, 2024 WL 2796996, at *2 (M.S.P.B. May 30, 2024) (*Final Decision*). On Ms. Woodroof's petition for review to our court, we now affirm.[2]

## I

## A

Ms. Woodroof began working at the agency as an auditor in May 1987. J.A. 126, 259. In 2012, Ms. Woodroof's then-supervisor rated her performance as below acceptable. J.A. 42, 99–100. In 2013, Ms. Woodroof filed a complaint against the agency with the Equal Employment Opportunity Commission concerning that rating, a suit she and the agency settled that year (the 2013 settlement); and later that year, she worked, without a PIP, on a short-term project under supervision by two individuals different from her 2012 supervisor. J.A. 39, 42, 44. In 2014, with Ms. Woodroof no longer supervised by the short-term-project

---

[2] Ms. Woodroof has moved in this court to supplement the record with (1) testimony from the agency's inspector general given at a congressional hearing in 2012 and (2) performance evaluations rendered before 2010. ECF No. 30 at 1–5. The agency opposed. ECF No. 32. We deny the motion for the reasons presented by the agency, including the principle that "we . . . may [not] consider in the first instance evidence not presented to the [administrative judge]," *Hernandez v. Department of Air Force*, 498 F.3d 1328, 1333 (Fed. Cir. 2007), and the absence of any showing or apparent reason that the documents would materially bear on whether the agency breached the settlement agreement's confidentiality provision.

supervisors, the agency placed her on a PIP, and in March 2015, it terminated her employment. J.A. 126, 278.

The next month, Woodroof appealed her termination to the Board, and in February 2016, she entered into a settlement agreement with the agency, resulting in the Board's dismissal of her appeal. J.A. 38; J.A. 28–35 (settlement agreement). The agency agreed to (1) pay Ms. Woodroof a lump sum; (2) provide a neutral reference to potential employers; (3) revise certain paperwork to reflect that Ms. Woodroof resigned for personal reasons; and (4) *remove* from Ms. Woodroof's official files, while retaining elsewhere, all records mentioning or arising from her 2014 PIP and 2015 termination. J.A. 30–32. The agreement contained a confidentiality provision:

> The parties agree that the terms of this Agreement are to be kept confidential. Ms. Woodroof agrees that she will not disclose or discuss the terms or conditions of this agreement with any person, other than the MSPB, her immediate family members, her attorney(s), her tax professionals, individuals conducting a background investigation or reinvestigation pertaining to Ms. Woodroof for an employment suitability determination, eligibility for a national security position, or a security clearance, and those OIG and Agency[, *i.e.*, Commerce,] employees responsible for implementing the terms of the Agreement, except as required by law, as necessary to implement the terms of the Agreement, or as ordered by a court or other body of competent jurisdiction. The OIG agrees to treat this Agreement in accordance with the Privacy Act, 5 U.S.C. § 552a.

J.A. 32. The settlement agreement also included a standard integration clause. J.A. 33.

B

In April 2017, the agency removed another employee, Patricia Derr, who then appealed pro se to the Board. *Derr v. Department of Commerce*, No. DC-0432-17-0511-I-1, 2017 WL 6270515 (M.S.P.B. Dec. 8, 2017). In October 2017, Ms. Derr asked Ms. Woodroof to be a witness at Ms. Derr's upcoming November 2017 hearing before the Board because the same two supervisors of Ms. Woodroof's 2013 short-term project later supervised Ms. Derr, not long before her 2017 termination. J.A. 39.

On direct examination during that hearing, Ms. Derr asked Ms. Woodroof whether she had been put on a PIP in 2012 or 2013, and over the agency's objection, Ms. Woodroof was allowed to answer questions on that subject. J.A. 260. *See generally* J.A. 259–91 (direct examination). Ms. Woodroof soon clarified that the plan she was focusing on was a 90-day plan beginning in March 2014. J.A. 262–63. Ms. Woodroof, in support of Ms. Derr's challenges, testified that her own "PIP was unreasonable for many reasons[, and] it became clear that the direction of the PIP was to force [her] out," and "what [she] was experiencing did not appear to comply with the law." J.A. 261. The presiding judge made attempts to restrict Ms. Woodroof's answers in accordance with a key premise of allowing her to testify, which was that her short-term-project supervisors later supervised Ms. Derr. *See* J.A. 267–70; *see* J.A. 259 (striking Ms. Derr's question about Ms. Woodroof's 2015 termination).

Agency counsel then cross-examined Ms. Woodroof. J.A. 291–310. He asked whether her 2013 short-term-project supervisors (the ones at issue in Ms. Derr's case) were the proposing or deciding officials for Ms. Woodroof's removal in 2015, and Ms. Woodroof said that they were not. J.A. 295. Ms. Woodroof then mentioned a "settlement"— seemingly the 2013 settlement, preceding her 2014 PIP—

and agency counsel referred to a "settlement agreement" (perhaps the same one, perhaps the 2016 one):

> AGENCY:    And [a different supervisor] was your supervisor of record from October 2009 until your proposed removal; wasn't she?
>
> MS. WOODROOF:    Of record, technically, not actual, of record.
>
> Q:  Sorry, I might have said supervisor, I mean second line supervisor; is that correct?
>
> A:  Well, you keep saying of record.  But the settlement established an unusual relationship between me and my supervisor.  Technically [that supervisor] was not supposed to be my supervisor.  According to my EEO agreement she was not supposed to –
>
> Q:  I am not asking you about a settlement agreement; that is not admissible.

J.A. 295–96.  The agency asked Ms. Woodroof several further questions about her performance, about which supervisor decided to terminate her employment, and who supervised Ms. Woodroof during her 2012-evaluation period and 2014 PIP.  J.A. 298–99; J.A. 308–09.  In so doing, the agency introduced Ms. Woodroof's 2012 evaluation into evidence for impeachment purposes.  J.A. 300–03.

C

On September 19, 2018, Ms. Woodroof petitioned the Board to enforce the 2016 settlement agreement.  J.A. 38–49; J.A. 372.  Ms. Woodroof alleged that the agency breached the settlement agreement's confidentiality provision by asking questions about her PIP and subsequent termination.  J.A. 40–46.  The agency responded that it did not breach the confidentiality provision by its disclosures in the Board proceeding in Ms. Derr's case.  J.A. 81–86.  In Ms. Woodroof's Reply in support of her petition (first-page

date October 18, 2018; faxed and docketed October 19, 2018, *see* J.A. 91–104, 372), she made a discovery request for a "written transcript [from Ms. Derr's hearing] to resolve discrepancies and ensure complete and accurate understanding of the hearing." J.A. 98–100.

Separately, Ms. Woodroof supplemented her Reply with a document (first-page date October 15, 2018; faxed and docketed October 19, 2018, *see* J.A. 120–24, 372) that she described as a "pleading," in which she alleged additional compliance problems unrelated to the asserted breach of the confidentiality clause. J.A. 120–24. The agency moved to strike that pleading, J.A. 141–44, and a few days later, Ms. Woodroof clarified that she was making only two discovery requests: (1) for "details underlying the [agency]'s assertion(s) regarding the Privacy Act" and (2) "a printed transcript" of the Derr hearing, J.A. 150–53. That discovery was never formally exchanged.

In November 2018, the agency asked to schedule a status conference, J.A. 197–99, and Ms. Woodroof agreed to participate in one, J.A. 205–08, but no conference occurred. In February 2019, the administrative judge (AJ) denied Ms. Woodroof's petition for enforcement. *Initial Decision*, at 1–2; J.A. 12–13. The AJ determined that "accurately answering questions about events that occurred during her prior employment d[id] not disclose the terms of th[e settlement a]greement" in violation of the confidentiality provision. *Id.* at 6 (internal quotations removed); J.A. 17. The AJ concluded that the agency did not violate the Privacy Act, or the confidentiality provision, because it did not ask anything pertaining to the agreement itself. *Id.* at 4, 7; J.A. 15, 18.

Ms. Woodroof petitioned for the Board to review the AJ's decision. J.A. 237–49. On May 30, 2024, the Board vacated the *Initial Decision* but denied both Ms. Woodroof's petition for review of the initial order and her petition for enforcement of the 2016 settlement agreement. *Final*

*Decision*, at \*1. The Board relied on the confidentiality paragraph of the agreement's express exception for disclosures to the Board. *Final Decision*, at \*2 (citing *Conant v. Office of Personnel Management*, 255 F.3d 1371, 1376 (Fed. Cir. 2001)). The Board also relied on the fact that Ms. Woodroof "voluntarily chose to participate as a witness in her coworker's hearing and answered questions on direct examination relating to her PIP[.]" *Id.* For those reasons, the Board ruled that "the agency's conduct in questioning [Ms. Woodroof] for the purpose of defending itself in litigation did not amount to a material breach of the agreement." *Id.*

Ms. Woodroof timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

We may set aside the Board's decision here only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence[.]" 5 U.S.C. § 7703(c). We review the Board's factual findings for substantial-evidence support. *Knox v. Department of Justice*, 125 F.4th 1059, 1064 (Fed. Cir. 2025). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938), even if an opposite conclusion might also be supportable, *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20 (1966). "Procedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials." *Curtin v. Office of Personnel Management*, 846 F.2d 1373, 1378 (Fed. Cir. 1988) (citations omitted). Challenges involving such matters must include a showing that the error at issue "caused substantial harm or prejudice." *Id.* at 1379 (citations omitted).

A

We first address Ms. Woodroof's contention that the Board abused its discretion by not ordering a status conference or compelling discovery. That failure, Ms. Woodroof alleges, ran afoul of 5 C.F.R. § 1201.183(a)(9), with the result that the Board relied on "inapplicable case law" to deny her petition. Woodroof Opening Br. at 10–12. We need not decide whether Ms. Woodroof did not properly present her discovery requests, as the agency suggests. *See* Appellee's Br. at 21. It is sufficient for rejecting her procedural challenge that she has not shown how granting her discovery requests or a status conference could have "affected the outcome of [her] case," the essential requirement for showing substantial harm or prejudice. *Curtin*, 846 F.2d at 1378. Nor do we discern such harm or prejudice, given the Board's grounds for rejecting the enforcement petition.

More particularly, regarding discovery, Ms. Woodroof asked for details about the agency's theory of how it complied with the Privacy Act during Ms. Derr's hearing. J.A. 152. Ms. Woodroof did not, however, "identify which documents [s]he specifically [was requesting]" or how that information would have changed the Board's conclusion. *Rueter v. Department of Commerce*, 63 F.4th 1357, 1371–73 (Fed. Cir. 2023); *see* Woodroof Opening Br. at 12. Although Ms. Woodroof also sought a written transcript of her testimony from Ms. Derr's hearing, she acknowledges that she had previously purchased one, the record includes a transcript, and on this point as on others, she discusses only the *Initial Decision*, not the *Final Decision*. Woodroof Opening Br. at 11; Woodroof Reply Br. at 14; *see* J.A. 152–53. Ms. Woodroof refers to discovery about her 2012 rating and her supplemental pleading pertaining to compliance, Woodroof Opening Br. at 12; *see* J.A. 152–53, but there is no showing of prejudice on the only issue before the Board, namely, material breach of the settlement agreement. She conceded that "[her] attorney did not include the [2012] ratings in [the] [s]ettlement [a]greement" and has not

indicated how her allegations in her second pleading pertained to the confidentiality provision. Woodroof Opening Br. at 7, 12. Finally, regarding Ms. Woodroof's request for a status conference, she says, without further elaboration, only that such a conference would have allowed the parties to resolve all discovery disputes. Woodroof Reply Br. at 14. That adds nothing to the prejudice analysis for the specified discovery requests.

We therefore reject Ms. Woodroof's challenge regarding procedure.

B

We also reject her challenge to the Board's denial of her petition for enforcement on its merits. The Board found that the confidentiality provision of the 2016 settlement agreement, which stated agency confidentiality commitments and promised to treat the agreement in accordance with the Privacy Act, 5 U.S.C. § 552a, contained a clear exception for disclosures to the Board and that the agency, in its conduct at the Derr hearing was not a material breach. *Final Decision*, at \*2. The above-quoted language of the confidentiality provision makes clear that the Board was correct about the content of the provision. And, contrary to Ms. Woodroof's argument to us, *see* Woodroof Opening Br. at 13–16; Woodroof Reply Br. at 7–11, we see no reversible error in the Board's findings that the record of the Derr hearing—which was clearly before the Board (*i.e.*, its AJ)—does not show a material breach by the agency.

As to the non-Privacy Act constraints within the provision, it is sufficient to note that the agency statements at issue were clearly made to the Board. That category of statements is expressly excepted from those constraints. In that crucial respect, the decision of this court in *Conant*, 255 F.3d at 1376, does not apply, as no such exception was present in that case.

As to the Privacy Act promise, Ms. Woodroof has not established a violation. Under 5 U.S.C. § 552a(b), the agency cannot "disclose any record which is contained in a system of records by any means of communication to any person, or to another agency," but that rule is subject to express exceptions, § 552a(b)(1)–(13), and one of them is for "routine use," § 552a(b)(3)—which means, "with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected," § 552a(a)(7). The Board here relied on Ms. Woodroof's own voluntary testimony in the Derr proceeding—which was to the effect that, through her 2014 PIP plan, the agency had acted in bad faith and in seeming noncompliance with law, moving in the direction of removing here. *Final Decision*, at \*2. That reasonable characterization of Ms. Woodroof's testimony is ample ground for deeming the agency's questions on cross-examination a use compatible with the purpose of the record collection, which includes providing an accurate account of agency dealing with employees so that the agency can defend itself against accusation of misconduct. Accordingly, we see no basis for setting aside the Board's holding that there was no material breach of the settlement agreement's promise to respect the Privacy Act.

## III

We have considered Ms. Woodroof's other arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's final decision.

The parties shall bear their own costs.

**AFFIRMED**