NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PHILLIP J. STEFFEN, LARA E. BEASLEY, SAMIR GEORGE ZAKHEM, A.K.A. SAM ZAKHEM,**
*Petitioners*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2015-3205

---

Petition for review of the Merit Systems Protection Board in Nos. DC-0752-14-0432-I-1, DC-0752-13-3391-I-1, DC-0752-13-1004-I-1, DC-0752-13-1838-I-1.

---

Decided: February 22, 2016

---

PHILLIP J. STEFFEN, Washington, DC, pro se.

LARA E. BEASLEY, Silver Spring, MD, pro se.

SAMIR GEORGE ZAKHEM, Manassas, VA, pro se.

JOSHUA A. MANDLEBAUM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C.

MIZER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD.

––––––––––

Before MOORE, O'MALLEY, and WALLACH, *Circuit Judges.*

PER CURIAM.

Pro se petitioners Phillip Steffen, Lara Beasley, and Samir George Zakhem appeal the final decision of the Merit Systems Protection Board ("MSPB"), which affirmed the decision of the United States Army Corps of Engineers ("USACE") to furlough each of them for six days as a result of "sequestration" imposed by the Budget Control Act of 2011. For the reasons set forth below, we affirm.

## BACKGROUND

The Budget Control Act of 2011 required approximately $1.2 trillion in across-the-board budget cuts, known as "sequestration," in the event Congress could not enact legislation effecting more targeted spending reductions. *See* Pub. L. No. 112-25, § 302, 125 Stat. 240, 256–59 (2011) (codified as amended at 2 U.S.C. § 901a). After Congress failed to enact targeted reductions, the Department of Defense ("DoD") faced a deficit of more than $30 billion for its operations and maintenance accounts used to pay the salary of DoD civilian employees. As a result, the Secretary of Defense ("Secretary") directed managers within the DoD to implement a furlough[1] program designed to address the more than $30 billion budget shortfall resulting from sequestration.

––––––––––

[1] *See* 5 U.S.C. § 7511(a)(5) (2012) ("'[F]urlough' means the placing of an employee in a temporary status without duties and pay because of lack of work or funds or other nondisciplinary reasons.").

Under the furlough program, the DoD sought to furlough most civilian employees for eleven days. However, nine categories of civilian employees were excepted from furloughs. Relevant to this appeal, "exception nine" provided that civilian employees whose compensation did not originate directly from accounts included in the DoD military (subfunctional category 051) or national defense (subfunctional category 050) budget would not be furloughed.

USACE decided to categorize employees as eligible or ineligible for exception nine by reference to each employee's Unit Identification Code ("UIC"), which appears on each employee's Form SF-50 at block 44 and can be used to "readily determine" the source funding the employee's position. Resp't's App. 14. Although the use of UIC's was straightforward, it was also imperfect, in part due to complexity in how different types of employees are compensated. To increase accuracy, USACE provided a process by which an employee with a military UIC could request an exception if, despite the military UIC, 100% of that employee's compensation originated from a non-051/050 source. In addition, Army regulations allowed USACE to annually review—and if necessary, correct—each employee's UIC. *See id.* at 16 (citing Army Regulation 570-4). "Deciding officials" were designated to receive replies from individual employees proposed to be furloughed, and were authorized to grant exceptions, reduce the number of days or hours furloughed, and make final decisions.

A military UIC appeared in block 44 of each petitioner's Form SF-50. Accordingly, each petitioner was furloughed. The petitioners appealed to the MSPB which, in an Initial Decision, affirmed the agency's decision. On petition for review of the Initial Decision, a two-member panel could not "agree on the disposition of the petition for review," and the Initial Decision therefore became the

final decision of the MSPB. *Id.* at 26–27. Petitioners appeal. This court has jurisdiction under 28 U.S.C. § 1295(a)(9) (2012).

## DISCUSSION

### I. Standard of Review and Legal Standard

When reviewing appeals from the MSPB, "th[is] court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions" that are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review the MSPB's legal determinations de novo. *Welshans v. U.S. Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008).

An agency may furlough an employee due to a lack of funds or for other non-disciplinary reasons. 5 U.S.C. §§ 7511(a)(5), 7512(5). However, because furloughs of thirty days or less constitute adverse actions, an agency's decision to furlough an employee may be set aside if it does not "promote the efficiency of the service." *Id.* § 7513(a).

Where furlough is the basis for suit, the "efficiency of the service" standard is satisfied if the agency can demonstrate "that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a fair and even manner." *Nat'l Fed'n of Fed. Emps., Local 1442 v. Dep't of the Army*, Nos. 2014-3175, 2014-3189, 2015 WL 6143247, at *4 (Fed. Cir. Oct. 20, 2015) ("*NFFE*") (internal quotation marks and citations omitted). An agency may not use a furlough as a pretext "to target employees for personal reasons." *Chandler v. Dep't of the Treasury*, 2013 M.S.P.B. 74, ¶ 9 (2013).

## II. The MSPB Did Not Err in Finding the Agency Furlough Program Reflected a Reasonable Management Solution and Was Applied in a Fair and Even Manner

Petitioners argue that using UICs "to determine furlough exemption is arbitrary and inherently unfair" because UICs "are in fact not representative of how employees are actually funded." Pet'r's Br. 3. In support, petitioners point to, among other evidence, a statement by USACE employee Mark Wichman that he "charge[d] 100% of [his] labor hours to [Formerly Used Defense Sites] labor codes for [fiscal year 2013]" but that he "was not furloughed" because of his civil UIC. *Id.* at 2–3. Petitioners assert the use of UICs thus "creat[es] an unfair circumstance and allow[s] the agency to avoid treating all similarly situated employees the same way." *Id.* at 3.

The MSPB determined that the petitioners, who were each assigned a military UIC, were not similarly situated to those assigned civil UICs, such as Mr. Wichman. *See* Resp't's App. 21–22 ("The [MSPB] determines case by case whether employees are similarly situated for purposes of furloughs. Here there is no dispute that each of the [petitioners] worked under a military UIC . . . and was thus subjected to the furlough." (citation omitted)). To the extent Mr. Wichman should have been assigned a military UIC and therefore furloughed, he is not similarly situated to petitioners, who were assigned military UICs and who challenge their furloughs.[2]

UICs are "assign[ed] . . . to positions to reflect the funding of those positions." *Id.* at 34; *see also id.* at 35

---

[2] The MSPB noted "no [petitioner] alleged or showed that he or she was actually eligible for an exemption or sought one and was improperly denied." Resp't's App. 24. Petitioners do not contest this finding on appeal.

(Upon annual review, UICs may "be changed to be consistent with the preponderance of the work the employee performs or is planned to perform for the next [fiscal year]."); *id.* at 79 ("[A] UIC . . . is supposed to be based on the preponderance of the work the position supports or how many positions exist in accordance with the funding split."). Colonel Louis B. Crespo, the Deputy Director of Resource Management for USACE, testified that "[t]he assignment of military or civil UICs to USACE positions is important because . . . DoD appropriations are not to be expended for civil works projects, nor are [c]ivil [w]orks appropriations to be expended for [DoD] missions." *Id.* at 30. Substantial evidence therefore supports the MSPB's determination that the use of UICs is "a reasonable management solution to the problem of distinguishing between employees funded by civil works projects, to whom exception number [nine] applied, and those funded by military subfunctions, to whom it did not." *Id.* at 22.

Petitioners similarly argue UICs are not an "appropriate methodology to determine furlough status" because they are "inaccurate." Pet'r's Br. 4–5. Although no transcript of hearing testimony appears in the record, Petitioners assert "the man in charge of setting the UIC codes for the Agency at the hearing stat[ed] that they are not accurate." *Id.* at 5. Indeed, Respondent concedes in its brief that "USACE's annual reviews may not have ensured 100-percent accuracy of UICs throughout USACE," Resp't's Br. 11, and that the "annual review process may have failed to reclassify some civil-UIC positions filled by employees doing entirely military work," *id.* at 14.

Although UICs may not perfectly correspond to the type of work the employee performs, the law does not require perfect management solutions. Instead, the law requires "that the furlough was a *reasonable* management solution to the financial restrictions placed on it and that the agency applied its determination as to which employ-

ees to furlough in a fair and even manner." *NFFE*, 2015 WL 6143247, at \*4 (emphasis added). Here, substantial evidence suggests that UICs tended to correlate with the source of an employee's funding, making UICs a legitimate basis on which to distinguish among employees for the purposes of furlough. In light of the facts of record, the MSPB did not err in determining USACE's method of determining furlough eligibility was a reasonable management solution that promoted the efficiency of the service.

### III. Substantial Evidence Supports the MSPB's Determination that Mr. Zakhem Failed to Establish His Change in UIC Was Improper

One petitioner, Mr. Zakhem, bases his claim not only on the assertion that the furlough program as a whole was not a reasonable management solution—a proposition we have rejected—but on the additional basis "that he was singled out [for a UIC change] for speaking out against fraud, waste and abuse." Pet'r's Br. 8. Mr. Zakhem explains he headed a two-person office in which he served in a civil works position for seven years, while his "deputy" was assigned a military UIC. *Id.* at 6–7. According to Mr. Zakhem, his UIC was "abruptly changed from a [c]ivil [w]orks position" to a military UIC, making him ineligible for exception nine, "without notification . . . [or] current/planned change to his duties or any proper rationale." *Id.* At the same time, the agency "reclassified his deputy from a [m]ilitary to a [c]ivil [w]orks UIC (shielding him from the furlough)." *Id.* "The end result," Mr. Zakhem concludes, "yielded NO benefit to the Agency because these two simultaneous UIC changes cancelled each other out and did not constitute a reasonable management action." *Id.*

Mr. Zakhem's claim is therefore not based on the agency's implementation of the furlough program per se, but on the antecedent act of alleged improper reclassifica-

tion of his UIC.[3]  Based on the reclassification, Mr. Zak-hem "raised [before the MSPB] the affirmative defense of whistleblowing."  Resp't's App. 24.  The MSPB issued an order on May 7, 2014, explaining the standards for a whistleblower case and instructing Mr. Zakhem to provide specific information to address those standards.  After Mr. Zakhem timely responded on May 30, 2014, and amended his response in Final Arguments dated June 6, 2014, the MSPB concluded he "did not establish a prima facie case" and therefore "did not meet his burden of proving [his whistleblower] claim."  *Id.* at 24–25.  In so concluding, the MSPB noted "[Mr.] Zakhem alleged . . . that his UIC was improper, but he did not provide any evidence in support of his bare assertion."  *Id.* at 23 n.3.

Mr. Zakhem interprets the MSPB's statement that he "did not provide any evidence" to mean the MSPB "neglected to consider" his SF-50s and his June 6, 2014 Final Arguments, and that in neglecting to do so, it erred.  Pet'r's Br. 6.  However, the MSPB stated that Mr. Zakhem "did not provide any evidence," beyond "bare assertion[s]," "that his UIC *was improper*."  Resp't's App. 23 n.3 (emphasis added).  The statement does not mean the MSPB did not consider the evidence, but that it found Mr. Zakhem did not provide evidence, beyond his assertions,

---

[3]    The record indicates the action initiating the reclassification of his position from a civil to a military UIC occurred on February 1, 2013.  The President did not order a budget reduction until March 1, 2013, and the Secretary did not issue the memorandum directing DoD managers "to prepare to furlough" employees until May 14, 2013.  Resp't's App. 42.  Mr. Zakhem concedes his UIC was changed "prior to the furlough," Pet'r's Br. 8, but speculates "it is reasonable to assume that management knew of its intent to exempt [c]ivil [w]orks [f]unded employees as early as Jan[uary] 2013."  Resp't's App. at 99.

that the change in UIC was improper. *See Gonzales v. West*, 218 F.3d 1378, 1381 (Fed. Cir. 2000) ("[A]bsent specific evidence indicating otherwise, all evidence contained in the record . . . must be presumed to have been reviewed by [the agency]."); *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986) ("We presume that a fact finder reviews all the evidence presented unless [the fact finder] explicitly expresses otherwise.").

Mr. Zakhem has since "withdr[awn] his whistleblower claim." Pet'r's Br. 8. He continues to assert, however, that he was improperly "single[d] out," *id.* at 8, under the standard set forth in *Chandler*, which states that, with respect to furlough, "the agency is required to treat similar employees similarly and to justify any deviations with legitimate management reasons." *Chandler*, 2013 M.S.P.B. at ¶ 8 (citing 5 C.F.R. § 752.404(b)(2)).

To the extent the pre-furlough change in Mr. Zakhem's UIC can be viewed as part of the agency's furlough action, the MSPB determined he had not provided any evidence that the change was improper. Substantial evidence in the record supports this conclusion. Mr. Zakhem's Form SF-50 indicates the "Nature of Action" is "Reassignment," Resp't's App. 126, but Mr. Zakhem points to nothing in the form itself suggesting the reassignment was improper, *see* Pet'r's Br. 6–7. His June 6, 2014 Final Arguments assert the reassignment was made with "specific intent to expose me to the furlough," but this assertion is based on the further speculation that "it is reasonable to assume that management knew of its intent to exempt [c]ivil [w]orks funded employees" before the reassignment. Resp't's App. 99.

To the contrary, Mr. Zakhem's supervisor explained the change in UIC was implemented to "align the Program and Project Management Community of Practice for future restructuring." *Id.* at 107; *see also id.* at 115. Under the deferential standard of review applied to

MSPB fact finding, we conclude the MSPB did not err in its determination.

## CONCLUSION

We have considered Petitioners' remaining arguments and find them unpersuasive. The decision of the Merit Systems Protection Board is

## **AFFIRMED**

## COSTS

No costs.