NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICHAEL A. WALLACE,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2016-2295

---

Petition for review of the Merit Systems Protection Board in No. AT-0752-13-0984-I-1.

---

Decided: May 3, 2017

---

MICHAEL A. WALLACE, Daphne, AL, pro se.

DELISA SANCHEZ, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., DEBORAH A. BYNUM.

---

Before MOORE, O'MALLEY, and REYNA, *Circuit Judges.*

PER CURIAM.

Petitioner Michael A. Wallace ("Wallace") appeals the final decision of the Merit Systems Protection Board ("the Board") affirming the United States Army Corps of Engineers' ("USACE" or "the agency") decision to furlough him for six days in 2013, as part of the sequestration furloughs that affected the entire Department of Defense ("DoD"). *Wallace v. Dep't of the Navy* ("*Final Decision*"), No. AT-0752-13-0984-I-1, 2016 MSPB LEXIS 3016 (M.S.P.B. May 19, 2016). For the reasons explained below, we *affirm*.

## BACKGROUND

Federal laws enacted in 2011 and 2012 required across-the-board budget cuts, known as "sequestration," in the event that Congress could not enact deficit reduction legislation. 2 U.S.C. § 901a. Congress failed to pass the necessary legislation, and on March 1, 2013, the President issued a sequestration order. As a result, DoD "faced a shortfall of more than $30 million for its operation and maintenance accounts, which fund the costs for many DoD civilian employees." *In re Corps of Eng'rs v. Dep't of the Army* ("*Initial Decision*"), No. AT-0752-14-0106-I-1, 2015 MSPB LEXIS 8249, at *3 (M.S.P.B. Sept. 30, 2015).

In a May 2013 memorandum, the Secretary of Defense directed managers within DoD to implement a furlough program and to prepare to furlough most civilian employees for up to 11 days during fiscal year 2013. *Id.* The memorandum identified specific categories of employees who would be excepted from the furlough. *Id.* at *15. Relevant to this appeal, "exception nine" provided that civilian employees whose compensation did not originate directly from accounts included in the DoD military or national defense budget would not be furloughed. *Id.* This exception included "employees funded by . . . DoD Civil Works . . . programs." *Id.* at *16. The Secretary of Defense exempted employees funded by "civil works" because furloughing those employees "would not

reduce the expenditure of DoD budgetary resources and so would not assist in meeting sequestration reductions." *Id.*

Determining how to comply with the furlough order presented unique challenges for USACE because it executes projects and programs funded by both DoD and non-DoD sources. For payroll purposes, USACE has three types of employees: (1) direct funded, who are funded with civil works appropriations exclusively; (2) project funded, who are paid with funds from reimbursable projects that USACE performs for both DoD and non-DoD customers; and (3) general and administrative/fee-for-service, who are paid with funds from project revenues. *Id.* at *17.

Given the complex way in which USACE employees are compensated, the agency categorized employees as eligible or ineligible for exception nine using each employee's Unit Identification Code ("UIC"), which appears on each employee's Form SF-50 at block 44, and can be used to determine the source of funding for the employee's position. *Id.* at *17. Each USACE employee's position is assigned either a military or a civil works UIC based on the workload of the particular office. *Id.* at *20-21 ("The pro-rata allocation of UICs within the office or entity as a whole mirrors the appropriate amounts of military and civil works funding, which is typically split throughout USACE in the ratio 60% civil works to 40% military."). Employees in positions with a military UIC are funded with DoD funds, whereas employees in positions with a civil works UIC are funded primarily with non-DoD, civil works funds. *Id.* at *17. The assignment of UIC codes within an office is important because "DoD military appropriations cannot be expended for civil works projects, and vice versa." *Id.* at *18.

USACE decided to furlough employees with military UIC positions and exempt employees with civil works UIC positions. Accordingly, if the UIC on an employee's Form

SF-50 was a civil works code, the employee was not sub-ject to the furlough pursuant to exception nine, but if the UIC was a military code, the employee was subject to the furlough because exception nine did not apply. *Id*. at \*19. As a precaution against any error in the assignment of UIC codes, USACE provided a process through which an employee in a position with a military UIC could request an exception if, despite the code assigned, 100% of that employee's compensation originated from a non-DoD source. *Id*. at \*19-20. In addition, Army regulations permitted USACE "to periodically review and if necessary change" UIC allocations "based on changing needs." *Id*. at \*21 (citing Army Regulation (AR) 570-4). USACE also instructed its officers to review UICs annually to ensure that they reflect "the preponderance of the work that [an] employee performs or is due to perform in the next fiscal year." *Id*.

Prior to instituting the furlough, the agency "scrubbed" the lists of employees with military UICs to confirm that the individuals had billed work to military projects during that fiscal year. *Id*. at \*25. Consistent with USACE policy, "[i]f an individual assigned a military UIC had billed 100% to a civil UIC during the relevant time period that individual was found to be exempt from the furlough," but all other individuals within the Mobile District whose positions had a military UIC were fur-loughed. *Id*.

Wallace works as an engineer for the USACE, Mobile District, in Mobile, Alabama.[1] It is undisputed that Wallace had a military UIC on his SF-50 during the relevant fiscal years and that he billed time to military

---

[1] While Wallace characterizes his position as "Elec-tronics Engineer," the agency identified his position as that of an "Electrical Engineer." This distinction is not at issue on appeal, however.

projects. Accordingly, in May 2013, the agency sent Wallace a Notice of Proposed Furlough. The Notice informed Wallace of his right to submit an oral and/or written response, which he did. Wallace was ultimately furloughed for six days.

Wallace appealed to the Board, and the Board consolidated his appeal with those of other USACE Mobile District employees challenging the agency's decision to furlough them. The administrative judge held a joint hearing for those appellants, like Wallace, who requested one. On September 30, 2015, the administrative judge issued an initial decision affirming USACE's decision to furlough Wallace and all of the other members of the consolidated appeal. *Initial Decision*, 2015 MSPB LEXIS 8249, at *40-41. The administrative judge found that the agency proved by preponderant evidence that: (1) the furloughs were a "reasonable management solution" to the financial restrictions; and (2) "the furlough was implemented in a fair and even manner." *Id*. at *9-14. In reaching these conclusions, the administrative judge found that the agency's use of UICs was a "reasonable management solution to the problem of identifying which employees should be subject to the furlough." *Id*. at *29. The administrative judge also found that the "furlough was implemented in accordance with due process requirements." *Id*. at *32.

Wallace petitioned the full Board for review. Two members of the Board determined that Wallace did not establish any basis for the Board to grant his petition. The Board therefore denied Wallace's petition for review and affirmed the initial decision, which became the final decision of the Board. *Final Decision*, 2016 MSPB LEXIS 3016, at *2.

Wallace timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

By statute, an agency may furlough an employee for lack of work or funds or for other non-disciplinary reasons. 5 U.S.C. §§ 7511(a)(5), 7512(5). Because furloughs of thirty days or less are adverse actions, an agency can only take such action if it "will promote the efficiency of the service." 5 U.S.C. § 7513(a). "We give wide berth to agency decisions as to what type of adverse action is necessary to 'promote the efficiency of the service,' provided that the agency's decision bears some nexus to the reason for the adverse action." *Einboden v. Dep't of the Navy*, 802 F.3d 1321, 1325-26 (Fed. Cir. 2015).

An agency satisfies the "efficiency of the service" standard by demonstrating that "the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a 'fair and even manner.'" *Nat'l Fed'n of Fed. Emps., Local 1442 v. Dep't of the Army*, 810 F.3d 1272, 1277 (Fed. Cir. 2015) ("NFFE") (quoting *Chandler v. Dep't of the Treasury*, 120 M.S.P.R. 163, 171 (2013)). We recently held that the USACE's use of UICs to determine which employees to furlough satisfies this standard. *Steffen v. Dep't of the Army*, 640 F. App'x 938, 941 (Fed. Cir. 2016).

In *Steffen*, we explained that, although UICs "may not perfectly correspond to the type of work the employee performs, the law does not require perfect management solutions." *Id.* Instead, the law requires "that the furlough was a *reasonable* management solution." *Id.*

Because the evidence showed that UICs tended to correlate with the source of an employee's funding, we found that the UICs were "a legitimate basis on which to distinguish among employees for the purposes of furlough." *Id.* We concluded, therefore, that the USACE's method of determining furlough eligibility was "a reasonable management solution that promoted the efficiency of the service." *Id.*

The Board correctly concluded—consistent with our analysis in *Steffen*—that the USACE satisfied the "efficiency of the service" standard. Specifically, the Board found that: (1) the agency's use of an employee's UIC was a reasonable management solution to the problem of identifying which employees to furlough; and (2) the agency "implemented the furlough in a uniform and consistent manner and treated similar employees similarly." *Initial Decision*, 2015 MSPB LEXIS 8249, at *14, *29.

On appeal, Wallace argues that the Board failed to consider certain facts and applied the wrong law. As explained below, we disagree.

With respect to the facts, Wallace alleges that he should have been exempt from the furlough because, although his position had a military UIC, the "preponderance" of the work he performed in 2012 and 2013 was on civil works projects. Specifically, Wallace states that he billed 76% of his time in 2012 to civil works projects, and that in 2013, that number increased to 83%. Pet'r Informal Br. 6. But Wallace was assigned to a position with a military UIC, and it was undisputed that he billed time to military projects during the relevant time period.

As noted, the agency implemented a procedure whereby an employee assigned to a military UIC position could apply for an exception if the employee billed 100% of his time to civil works. The Board found that this procedure was reasonable, and we find no reason to disturb that finding on appeal. *See Initial Decision*, 2015 MSPB

LEXIS 8249, at \*25, n.8 (noting that, given the agency's time constraints, it "was reasonable" to implement the furlough based on the current UIC "and only except those appellants with a military UIC if it was determined that they billed 100% to civil works"). Because Wallace did not present any evidence that he worked 100% of the time on civil works projects, he did not qualify for this exception.

Wallace also suggests that the agency failed to follow its procedures, which required that it review and update UICs annually. But the agency had a policy requiring that each office conduct an annual review of the assigned codes, and it is presumed to have followed that policy. *See Miley v. Principi*, 366 F.3d 1343, 1347 (Fed. Cir. 2004) ("[I]n the absence of clear evidence to the contrary, the court will presume that public officers have properly discharged their official duties."). Even if there were military UIC positions that should have been reclassified during the annual review process, however, that factor alone does not mean that the agency's use of the UICs was arbitrary. As we recognized in *Steffen*, although UICs "may not perfectly correspond to the type of work the employee performs," the law does not require perfection. 640 F. App'x at 941. Instead, the furlough must be a *reasonable* management solution, and we have already concluded that USACE's use of UICs was reasonable. *Id.* In any event, substantial evidence suggests that the nature of the agency's workload required employees to work on both civil works and military projects and that there was some effort to match UICs to the preponderance of the employees' work. *See id.* at \*21.

Next, Wallace argues that not all of the furloughed employees who participated in the consolidated appeal held military UIC positions during the furlough period. In support of this argument, Wallace submits that Derrick D. Collier, another USACE employee who participated in the consolidated appeal, encumbered a civil UIC position, but was furloughed. The government responds

by pointing to a page from a work report dated June 29, 2013, which was marked as "Agency Hearing Exhibit" and was admitted into evidence at the hearing before the administrative judge. The exhibit shows that, at the time of the furlough, Collier served in a military UIC position. Because both Wallace and Collier served in military UIC positions and billed time to military projects during the relevant time period, both were furloughed.

Wallace argues that the work report is "inaccurate" because it is dated June 29, 2013, instead of on, or before, June 1, 2013. Pet'r Informal Br. 14. He also suggests that it erroneously lists Collier as occupying a military UIC position. To the extent Wallace contends that the Board erred in admitting the work report into evidence, that argument is without merit. It is well established that "[p]rocedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials." *Curtin v. Office of Personnel Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988). We "will not overturn the board on such matters unless an abuse of discretion is clear and is harmful." *Id.*

Wallace has not shown that admission of the work report resulted in a clear and harmful abuse of discretion. Even if Collier was assigned to a civil works UIC position at the time of the furlough, that fact would have no bearing on whether Wallace's furlough was justified. It is undisputed that Wallace worked on military projects during the relevant time period and thus was not eligible for an exception to the furlough. Accordingly, the Board did not abuse its discretion by admitting the work report into evidence.

Having concluded that Wallace's challenges to the Board's factual findings are without merit, we turn to his argument that the Board applied the wrong law. Specifi-

cally, Wallace contends that the Board applied *Chandler* "improperly."[2]   Pet'r Informal Br. 21.  According to Wallace, proper application of *Chandler* demonstrates that the agency should have reclassified his position to a civil works UIC to reflect the "preponderance" of his work.  *Id.* But nothing in *Chandler* requires the agency or the Board to administer the furlough consistent with Wallace's sense of how his position should be classified.  *See Chandler*, 120 M.S.P.R. at 171 (stating that the agency is not "required to apply the furlough in such a way as to satisfy the Board's sense of equity").  Instead, *Chandler* explained that "the agency is required to treat similar employees similarly and to justify any deviations with legitimate management reasons."  *Id.*

Applying *Chandler*, the Board found that UICs were a legitimate basis for distinguishing among USACE employees for purposes of the furlough.  *Initial Decision*, 2015 MSPB LEXIS 8249, at *29.  We find no error in that conclusion, which is consistent with our decision in *Steffen*.  640 F. App'x at 941 ("[S]ubstantial evidence suggests

---

2    Wallace also submits that the Board erred by failing to apply *Weaver v. Department of the Navy* and *Houston v. United States Postal Service*.  Pet'r Informal Br. 21.  Wallace provides no citation for either case, however.  To the extent Wallace intended to cite *Weaver v. Department of the Navy*, 2 M.S.P.B. 297 (1980), that case did not involve a furlough decision, and Wallace provides no explanation as to why it is relevant here.  Likewise, to the extent Wallace intended to cite the Fifth Circuit's decision in *Houston v. United States Postal Service*, 823 F.2d 896 (5th Cir. 1987), which involved the Federal Tort Claims Act, it is unclear how that case provides any support for his position.  Because Wallace fails to explain how these cases relate to his appeal, we decline to address them further.

that UICs tended to correlate with the source of an employee's funding, making UICs a legitimate basis on which to distinguish among employees for the purposes of furlough."). The Board therefore correctly found that the use of UICs was a reasonable management solution and that the agency implemented the furloughs in a uniform and consistent manner.

Finally, Wallace alleges that both the agency and the Board committed "harmful errors and due process violations." Pet'r Informal Br. 22. In particular, Wallace complains that the agency did not provide him with an individualized response addressing the arguments he set forth in his reply to the furlough notice. Wallace also argues that the Board failed to assess facts specific to his case. *Id.* at 23.

The Board considered and rejected Wallace's due process arguments. As noted, the agency gave appellants the opportunity to present oral and/or written replies to the proposed furloughs. The record also showed that a deciding official "reviewed all of the replies and had the authority to reverse the proposed furlough action for any individual mistakenly excluded from an established exception[], as well as to recommend an employee be exempted in the event a unique circumstance supported a new exception." *Initial Decision*, 2015 MSPB LEXIS 8249, at *33-34. Because the deciding official reviewed the individual responses and had the authority to individually exempt employees from the furlough, the Board found that the agency's procedures satisfied due process requirements. *Id.* at *34.

We agree with the Board that the agency implemented the furlough in accordance with due process. In a recent furlough decision we held that, "[w]hile a deciding official must possess authority to take or recommend action, due process does not require 'unfettered discretion to take any action he or she believes is appropriate' or

require 'consider[ation of] alternatives that are prohibited, impracticable, or outside of management's purview.'" *Calhoun v. Dep't of the Army*, 845 F.3d 1176, 1179 (Fed. Cir. 2017) (quoting *Rodgers v. Dep't of the Navy*, 122 M.S.P.R. 559, 565 (2015)). Because the deciding official here had the authority to reverse a proposed furlough or recommend a new exception, we conclude that due process requirements were satisfied. Accordingly, the Board did not err in finding that there were no due process violations relating to the furlough. *Initial Decision*, 2015 MSPB LEXIS 8249, at *35.

## CONCLUSION

For the foregoing reasons, and because we find Wallace's remaining arguments are without merit, we affirm the Board's final decision.

## **AFFIRMED**

### COSTS

No costs.