# United States Court of Appeals for the Federal Circuit

---

**SEAN C. HIGGINS,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2018-2352

---

Petition for review of the Merit Systems Protection Board in Nos. AT-0752-17-0625-I-2, AT-1221-18-0019-W-2.

---

Decided: April 17, 2020

---

JOHN WHITTY, Government Accountability Project, Washington, DC, argued for petitioner. Also represented by STEPHANI AYERS, Law Office of S.L. Ayers, Medford, OR.

ASHLEY AKERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JOSEPH H. HUNT, ALLISON KIDD-MILLER, ROBERT EDWARD KIRSCHMAN, JR.

---

Before LOURIE, TARANTO, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge*.

Petitioner Sean Higgins appeals the Merit Systems Protection Board's decision denying corrective action for his suspension and affirming his removal by the Department of Veterans Affairs from his role as a Supply Technician at the Memphis Veterans Administration Medical Center due to misconduct. Mr. Higgins argues that the Board improperly discounted his medical evidence of post-traumatic stress disorder (PTSD) in assessing the reasonableness of his suspension and removal, and that the Administrative Judge abused his discretion by excluding certain witness testimony relevant to institutional motive to retaliate. We discern no reversible error and affirm the Board's decision.

## BACKGROUND

Mr. Higgins began his employment with the Memphis Veterans Administration Medical Center (VAMC) in 2007. Throughout his employment, Mr. Higgins reported unlawful activity at the VAMC ranging from misuse of agency letterhead to improper disposal of biohazardous material. As a result, Mr. Higgins had a reputation throughout the VAMC for being a whistleblower. Mr. Higgins also had a history of conflict with his supervisors and coworkers.

In 2016, a psychologist diagnosed Mr. Higgins with "experiencing significant anxiety and meet[ing] criteria for PTSD, chronic." J.A. 102. The psychologist found that Mr. Higgins's "symptoms of anxiety began in 2009." J.A. 101. Mr. Higgins's PTSD symptoms included "chronic anxiety and hypervigilance, irritability, fear of harm, [and] mistrust of others," and his psychologist noted "no expected date of remission, full or partial." J.A. 102. Because Mr. Higgins "continue[d] to experience significant anxiety at work and ongoing conflict," his psychologist "conclude[d] that Mr. Higgins cannot work, even with restrictions, and this is permanent." *Id.*

In March 2017, the VAMC suspended Mr. Higgins for using "disrespectful language toward a supervisor." J.A. 110. Mr. Higgins had used profanity during a December 2016 interaction with his immediate supervisor, Mr. Pointdexter, during an introduction to Mr. Higgins's new second-level supervisor, Mr. Ambrose. Upset about a pay issue, Mr. Higgins greeted the pair with profanities, and continued using profane language after Mr. Pointdexter asked him to refrain from doing so. Mr. Pointdexter proposed a fourteen-day suspension as a consequence of that interaction, and included an analysis of the factors set out in *Douglas v. Veterans Administration*, 5 M.S.P.B. 313 (1981).[1] Mr. Kehus, the Interim Associate Medical Director of the VAMC, sustained Mr. Higgins's suspension because it was "the third incident of a similar type" and he "did not get the impression that [Mr. Higgins] accepted any responsibility or would change [his] behavior." J.A. 278 (Tr. 257:10–16). In evaluating Mr. Higgins's proposed suspension, Mr. Kehus considered and agreed with Mr. Pointdexter's *Douglas* analysis. Later, during an oral hearing on the merits before the Administrative Judge, Mr. Kehus testified that he viewed Mr. Higgins's whistleblower status and PTSD as mitigating factors in determining the reasonableness of Mr. Higgins's suspension, and that those mitigating factors motivated Mr. Kehus to offer Mr. Higgins a "paper suspension" without loss of pay, rather than an unpaid suspension. J.A. 274–76 (Tr. 253:12–255:18).

In June 2017, the VAMC removed Mr. Higgins based on charges of disruptive behavior and use of profane language. Mr. Reesman, the official proposing Mr. Higgins's removal, identified three incidents supporting removal.

---

[1]     *Douglas* sets forth twelve factors relevant to determining whether an adverse agency action is reasonable. 5 M.S.P.B. at 331–32.

First, in February 2017, a witness observed Mr. Higgins leaving a meeting with VA management officials, including Mr. Kehus, at which point Mr. Higgins stated, "'remember I know where you live' or words to that effect." J.A. 123. After being informed of Mr. Higgins's statement, Mr. Kehus contacted the VA Police. Mr. Kehus testified that as a result of Mr. Higgins's behavior, people felt unsafe after the meeting.

Second, during a March 2017 meeting at the VAMC's Equal Employment Opportunity office, Mr. Higgins appeared very upset and made threatening and profane statements that caused a witness to contact the VA Police to request their presence in the area. Witnesses heard Mr. Higgins state that he was "tired of them messing with me," "I am ready to go to jail," "Do I have to put somebody in the ground for them to leave me alone," "Do I have to put a [.]45 to the Director's head," and "[S]omebody is going to pay." *Id.* The VAMC's Chief of Police considered Mr. Higgins's statements a valid threat against the Director and recommended that the Director wear a bulletproof vest and receive a police escort to and from his car each day. J.A. 147 (Tr. 152:14–153:9). Fearing for his life, the Director accepted the police escort and a bulletproof vest from the VA Police. J.A. 230–31 (Tr. 156:9–157:6). But because the vest provided by the VA Police would not stop a .45-caliber round, the Director purchased a more protective vest at his own expense and wore it daily for approximately three months until he moved out of state. J.A. 230–33 (Tr. 156:9–159:6). As a result of this experience, the Director successfully filed a workers' compensation claim for PTSD. J.A. 231 (Tr. 157:7–22).

Third, in April 2017, Mr. Higgins loudly confronted another VAMC employee who was escorting a veteran's family to the morgue after the employee had greeted Mr. Higgins by his first name. Mr. Higgins stepped toward the employee, and stated, in a raised tone, "Who gives you the right to call me by my first name, you need to address

me by Mr. Higgins." J.A. 123. After a member of the veteran's family stepped between the employee and Mr. Higgins, Mr. Higgins did not approach further. J.A. 155 (Tr. 222:5–14). The employee testified during the hearing that Mr. Higgins's actions created a hostile and uncomfortable situation and made her very nervous. J.A. 154 (Tr. 218:8–219:2). She also testified that management and employees at the VAMC were afraid of Mr. Higgins. *Id.*

Mr. Reesman's written *Douglas* factor analysis accompanying his proposal to remove Mr. Higgins addressed each *Douglas* factor. For example, Mr. Reesman noted that these incidents "are serious offenses" in that "[t]he comments made by the employee and the manner in which he made them have caused fellow employees, management officials and visitors to the VAMC to become frightened and apprehensive." J.A. 111. Mr. Reesman identified "mitigating factors, such as, ongoing work tension, [and] the employee['s] personal and professional conflict with management." J.A. 113. But his written analysis did not even mention Mr. Higgins's PTSD. J.A. 111–13. Mr. Reesman noted that he "considered alternative sanctions but concluded that a removal is the appropriate penalty in this instance mainly due to the nature and seriousness of the offenses along with the employee's past disciplinary record." J.A. 113. Mr. Reesman did not testify at the hearing on the merits of Mr. Higgins's case. Indeed, the Administrative Judge's prehearing order summarily precluded Mr. Reesman's testimony as "irrelevant and/or redundant." J.A. 108.

As the VAMC's Director, Mr. Dunning was the official who authorized Mr. Higgins's removal. He had served in that role for approximately one month when he decided to remove Mr. Higgins. Mr. Dunning testified that he relied on Mr. Reesman's *Douglas* factor analysis and that it was attached as part of his own written analysis. He testified that he also considered Mr. Higgins's PTSD as part of his analysis, but that ultimately, he concluded that the

mitigating circumstances were not sufficient to offset the seriousness of the incidents underlying the charges, which included threatening others.  *See* J.A. 138 (Tr. 116:16–117:4); J.A. 142–43 (Tr.  131:11–132:12, 134:7–10).  According to the terse, two-sentence summary that Mr. Dunning himself wrote, Mr. Dunning determined that removal was warranted due to Mr. Higgins's "[s]ustained pattern of disruptive behavior consisting of profane language, intimidating actions, and threatening behaviors," and because "[p]revious actions to correct [Mr. Higgins's] behavior have not been successful."  J.A. 114.

Mr. Higgins appealed the VAMC's suspension and removal decisions to the Board, which consolidated Mr. Higgins's appeals, denied corrective action with respect to Mr. Higgins's suspension, and affirmed the agency's removal decision.  Considering Mr. Higgins's suspension, the Administrative Judge noted prior decisions in which "insolent disrespect toward a supervisor warrant[ed] removal when coupled with past, similar misconduct."  *Higgins v. Dep't of Veterans Affairs*, No. AT-1221-18-0019-W-2, 2018 MSPB LEXIS 2040, at *14 (M.S.P.B. June 7, 2018) (*Decision*) (first citing *Richard v. Dep't of the Air Force*, 43 M.S.P.R. 303, 309 (1990), *aff'd*, 918 F.2d 185 (Fed. Cir. 1990); then citing *Carson v. Veterans Admin.*, 33 M.S.P.R. 666, 669 (1987)).  The Administrative Judge determined that the agency's suspension of Mr. Higgins was reasonable given that Mr. Higgins had previously been disciplined for similar misconduct and "did not meaningfully deny using the language charged" in the context of meeting his new second-level supervisor.  *Id.* at *13–14.  The Administrative Judge also concluded that Mr. Higgins failed to establish a whistleblower defense because he failed to establish an institutional motive to retaliate.  *Id.* at *15–16.  The Administrative Judge accordingly declined to order corrective action with respect to Mr. Higgins's suspension.  *Id.* at *17.

Regarding Mr. Higgins's removal, the Administrative Judge concluded that the agency proved its disruptive

behavior and use of profane language charges and a nexus between the charges and the efficiency of service. *Id.* at *21–29, *42–43. He also determined that the agency had considered and balanced the relevant *Douglas* factors, including mitigating factors such as Mr. Higgins's PTSD. *Id.* at *44–48. The Administrative Judge found that the "mitigating factors could not overcome the extreme seriousness of the charges." *Id.* at *45. In so finding, he emphasized Mr. Dunning's statements that "the safety of Memphis VAMC employees is his top priority," that allowing Mr. Higgins to stay at the VAMC would not be consistent with that priority, and that Mr. Higgins's ".45 to the Director's head" remark standing alone would justify removal. *Id.* The Administrative Judge also agreed with Mr. Dunning's "determination that the sustained charges are extremely serious, especially in light of the plague of workplace violence which afflicts our nation." *Id.* at *48. Balancing the seriousness of the charges with the other *Douglas* factors, the Administrative Judge determined that the penalty of removal was "within the range of reasonableness" and promoted "the efficiency of the service." *Id.*

The Administrative Judge found that Mr. Higgins had established a prima facie whistleblower retaliation defense. *Id.* at *30–31. Examining the *Carr* factors, however, the Administrative Judge determined that the agency's evidence was strong, Mr. Higgins had failed to prove a strong institutional motive to retaliate, and neither party had presented relevant evidence of agency actions taken against similarly-situated employees. *Id.* at *31–33; *see also Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Administrative Judge therefore concluded that the agency would have removed Mr. Higgins even in the absence of his protected whistleblowing activity and affirmed the agency's removal decision. *Decision*, 2018 MSPB LEXIS 2040, at *33–34. The Administrative Judge's initial decision became the final decision of the Board. Mr. Higgins appeals.

DISCUSSION

On appeal, Mr. Higgins asserts that the Board improperly discounted his medical evidence of PTSD in assessing the reasonableness of the agency's penalties of suspension and removal under *Douglas*. He further argues that the Administrative Judge erred by excluding the testimony of certain witnesses regarding an agency motive to retaliate against Mr. Higgins due to his whistleblower disclosures.

I

As a threshold matter, we hold that we have jurisdiction over Mr. Higgins's appeal under 28 U.S.C. § 1295(a)(9). Citing Mr. Higgins's original Form 10 Statement Concerning Discrimination, which did not abandon Mr. Higgins's discrimination claims, the Government argues that we do not have jurisdiction over this appeal because it is a "mixed" case involving an MSPB appeal of a personnel action and an allegation that the personnel action was based on discrimination. Appellee's Br. 22–24 (citing *Diggs v. Dep't of Hous. & Urban Dev.*, 670 F.3d 1353, 1355 (Fed. Cir. 2011)). "[I]n mixed cases . . . in which the employee (or former employee) complains of serious adverse action prompted, in whole or in part, by the employing agency's violation of federal discrimination laws, the district court is the proper forum for review." *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1988 (2017). Mr. Higgins filed an amended Form 10 abandoning his discrimination claims with his reply. Statement Concerning Discrimination, *Higgins v. Dep't of Veterans Affairs*, No. 18-2352 (Fed. Cir. July 31, 2019), ECF No. 42; *see also* Reply 20. Because Mr. Higgins's amended Form 10 abandons all discrimination claims, we have jurisdiction over his appeal.

II

We will uphold the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures

required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shapiro v. Social Sec. Admin.*, 800 F.3d 1332, 1336 (Fed. Cir. 2015) (quoting *Abrams v. Soc. Sec. Admin.*, 703 F.3d 538, 542 (Fed. Cir. 2012)).

To take adverse action against an employee, an agency must (1) "establish by preponderant evidence that the charged conduct occurred," (2) "show a nexus between that conduct and the efficiency of the service," and (3) "demonstrate that the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas v. Veterans Admin[istration]*." *Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1356 (Fed. Cir. 2009) (first citing 5 U.S.C. § 7701(c)(1)(B); then citing *id.* § 7513(a); and then citing *Douglas*, 5 M.S.P.R. at 307–08).

The Whistleblower Protection Act prohibits retaliation against an employee for whistleblowing. *See* 5 U.S.C. § 2302(b)(8). A burden shifting framework applies to an employee's whistleblowing defense against an adverse agency personnel action, such as a suspension or removal. *See Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012). First, an agency must prove its case for the adverse personnel action by a preponderance of the evidence. *Id.* The burden then shifts to the employee to "prove by a preponderance of the evidence that he or she made a protected disclosure under § 2302(b)(8) that was a contributing factor to the" personnel action. *Id.* "If the employee establishes this prima facie case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Id.* (italics omitted) (quoting 5 U.S.C. § 1221(e)).

To determine whether an agency has met its burden to prove that it would have taken the same action regardless

of any whistleblower disclosures, we apply the *Carr* factors, evaluating:

> [1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Carr*, 185 F.3d at 1323 (citation omitted).

### III

### A

Mr. Higgins challenges the Board's conclusion that the agency's suspension and removal actions were reasonable, arguing that the Board improperly discounted medical evidence of his PTSD.[2] Specifically, Mr. Higgins asserts that

---

[2] Mr. Higgins's opening brief raises as separate issues the Board's insufficient consideration of his PTSD in affirming his suspension and his removal. Appellant's Br. 1. But Mr. Higgins's opening brief does not separately argue that the Board's analysis of his suspension improperly discounted his PTSD. *See* Appellant's Br. 26–33. Indeed, Mr. Higgins's arguments that the Board's consideration of his PTSD was inadequate cite only the Board's decision as a whole and the portions of the Board's decision discussing removal. *See id.* Because Mr. Higgins does not separately argue that the Board improperly discounted his PTSD in analyzing his suspension, we do not consider that argument as a separate issue from whether the Board improperly discounted Mr. Higgins's PTSD in analyzing his removal. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319–20 (Fed. Cir. 2006)

it was erroneous that the Board "only acknowledged [he] was diagnosed with PTSD, but . . . did not analyze the impact of the PTSD symptoms or whether the PTSD may have caused his misconduct." Appellant's Br. 30.

Though the Board's analysis of Mr. Higgins's PTSD is cursory, it does not present reversible error. The Board properly balanced Mr. Higgins's PTSD with the severity of his misconduct and the other *Douglas* factors. Mr. Higgins's PTSD was one of several mitigating factors considered by both the agency and the Board. Indeed, the Board recognized that Mr. Higgins's PTSD was severe and substantially limited one or more of his major life activities. *Decision*, 2018 MSPB LEXIS 2040, at *37. But even accepting as true Mr. Higgins's assertion that his PTSD caused his threatening behavior toward other employees, we cannot say that the agency's determination to remove Mr. Higgins was outside the tolerable limits of reasonableness given the agency's stated goal of protecting its employees from workplace violence. As we have repeatedly held, the Board's role in reviewing an agency's penalty is restricted to assuring that the agency's penalty is within the tolerable limits of reasonableness. *Norris v. Sec. & Exch. Comm'n*, 675 F.3d 1349, 1355 (Fed. Cir. 2012) (quoting *Douglas*, 5 M.S.P.B. at 332). The Board did not err in concluding as much here.

Mr. Higgins complains that the Board did not consider all the evidence and merely reasoned that, even if he had

---

(holding an argument waived because it was not presented as a developed argument in the opening brief). Regardless, any error in the Board's consideration of Mr. Higgins's PTSD in its suspension analysis is harmless because the record indicates that Mr. Kehus, the agency's deciding official, considered Mr. Higgins's PTSD as a mitigating factor in determining the reasonableness of Mr. Higgins's suspension. J.A. 276 (Tr. 255:12–15).

PTSD, Mr. Higgins was still responsible for the words he spoke. Appellant's Br. 24. It is true that the Board stated that (1) "neither the Rehabilitation Act nor the ADA immunize disabled employees from discipline for their misconduct in the workplace," and (2) "an agency is never required to excuse a disabled employee's violation of a uniformly-applied, job-related rule of conduct, even if the employee's disability caused the misconduct." *Decision*, 2018 MSPB LEXIS 2040, at *45–46. We agree that the Board would have erred had this been the sum total of its analysis. But, as explained above, the Board did not apply a per se rule that a person suffering from mental illness is always responsible for his misconduct. Rather, the Board considered Mr. Higgins's PTSD as a mitigating factor, balanced that factor against the seriousness of the sustained charges and other *Douglas* factors, and concluded that removal was a reasonable and appropriate penalty in view of the VAMC's "top priority" to keep its employees safe, "especially in light of the plague of workplace violence which afflicts our nation." *Id.* at *45, *48.

B

Mr. Higgins analogizes his case to *Malloy* and *Bal v. Dep't of the Navy*, 729 F. App'x 923 (Fed. Cir. 2018), arguing that as in those cases, a remand is appropriate here, because the Board "performed no analysis of Mr. Higgins's medical evidence, ignoring his doctor's testimony completely." Appellant's Br. 30, 32–33. Neither case supports the remand Mr. Higgins seeks.

In *Malloy*, we vacated the Board's decision affirming the agency's removal of Ms. Malloy and remanded because the Board's decision failed to consider any of the medical evidence Ms. Malloy had submitted to the agency or the Board. 578 F.3d at 1357. Ms. Malloy argued before the agency and the Board that mental impairment sometimes caused her to act inappropriately, that her response to her proposed notice of removal indicated the presence of

supporting medical documentation, and that she had pro-
vided "extensive medical documentation" at her hearing
before the Board. *Id.* at 1354. But in addition to treating
Ms. Malloy's medical condition as irrelevant, her letter of
removal from the agency dismissed her medical condition
as lacking "any definitive medical evidence." *Id.* The
Board's decision acknowledged Ms. Malloy's testimony
that her medical condition precluded her from performing
simple tasks but discounted her testimony as "not credible
and unsupported by the record," further finding that she
had "failed to establish any medical reason or provide any
medical documentation that could justify or excuse her be-
havior." *Id.* at 1356 (citations omitted).

Here, by contrast, both the agency's deciding official
and the Board acknowledged Mr. Higgins's PTSD and ex-
pressly considered it as a mitigating factor in assessing the
reasonableness of Mr. Higgins's removal. J.A. 141–43
(Tr. 127:3–5,     131:11–132:12,     134:7–10); *Decision*,
2018 MSPB LEXIS 2040, at *44–45. Additionally, the
agency's case supporting Mr. Higgins's removal is stronger
than was the agency's case for Ms. Malloy's removal. Like
Mr. Higgins, Ms. Malloy had a history of conflict with her
supervisors. *Malloy*, 578 F.3d at 1353. Unlike Mr. Hig-
gins, however, Ms. Malloy was not found to present a
threat to herself or others, and her mental condition was
expected to resolve within a year of the onset of her symp-
toms. 578 F.3d at 1355. Mr. Higgins, by contrast, was
found to present a threat to other VAMC employees, and
his mental condition had "no expected date of remission,
full or partial." J.A. 102; *see also, e.g.*, J.A. 147 (Tr. 152:14–
153:9). Indeed, his psychologist had determined that he
"cannot work, even with restrictions, and this is perma-
nent." J.A. 102.

*Bal* is similarly distinguishable. The Navy proposed
removal of Mr. Bal after he failed to report for work and
falsified time cards. 729 F. App'x at 924–25. Mr. Bal re-
sponded that his misconduct was related to his major

depression, for which he provided medical documentation and was seeking treatment. *Id.* at 925. Though the Board's decision acknowledged Mr. Bal's depression diagnosis and the existence of supporting medical evidence, the Board failed to weigh Mr. Bal's depression as a mitigating factor. *Id.* at 929. Instead, the Board discounted Mr. Bal's evidence of depression because it "did not establish incapacity." *Id.* (citation omitted). The Board also substituted its own judgment in place of record evidence supporting Mr. Bal's rehabilitation, which included his prompt return to work, "great improvement and . . . substantial behavioral changes," and his doctor's opinion that he was "not likely to repeat the problem[atic]" behavior. *Id.* at 929–30. Setting this evidence aside, the Board concluded that "Mr. Bal did not have rehabilitation potential because he had not taken responsibility for his actions." *Id.* at 927. We held that the Board erred in assessing the reasonableness of Mr. Bal's removal by failing to consider Mr. Bal's depression as a mitigating factor and by failing to consider Mr. Bal's rehabilitation evidence. *Id.* at 928, 930.

Here, as discussed above, both the agency's deciding official and the Board expressly considered Mr. Higgins's PTSD as a mitigating factor in assessing the reasonableness of his removal. J.A. 141–43 (Tr. 127:3–5, 131:11–132:12, 134:7–10); *Decision*, 2018 MSPB LEXIS 2040, at *44–45. Additionally, whereas Mr. Bal was "neither a danger to himself or to others," 729 F. App'x at 925 (citation omitted), Mr. Higgins presented a threat to other VAMC employees, *e.g.*, J.A. 123; J.A. 147 (Tr. 152:14–153:9); J.A. 154 (Tr. 218:8–14). And it is undisputed that unlike Mr. Bal, Mr. Higgins did not improve with continued treatment of his condition. *Compare* 729 F. App'x at 929–30, *with* J.A. 102 *and* Oral Arg. at 7:27–8:40, 18:43–19:12, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2018-2352.mp3.

In sum, neither *Malloy* nor *Bal* provides a basis to vacate the Board's decision and remand, and we discern no

reversible error in the Board's analysis of the reasonableness of Mr. Higgins's removal.

IV

Mr. Higgins also asserts that the Administrative Judge abused his discretion by excluding testimony of Mr. Reesman and Ms. Depperman regarding an institutional motive to retaliate that was material to Mr. Higgins's whistleblower defense. "Procedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials." *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988) (citations omitted).

With respect to Mr. Reesman, Mr. Higgins concedes that Mr. Reesman "likely possessed no retaliatory motive," but argues that it was an abuse of discretion to exclude Mr. Reesman's proffered testimony because it "spoke precisely to those who influenced his decision to propose the third retaliatory removal of Mr. Higgins." Reply 13–14 (emphasis omitted). Although Mr. Higgins now contends that Mr. Reesman's testimony was relevant to an institutional motive to retaliate, Mr. Higgins did not explicitly proffer Mr. Reesman to testify regarding that topic. *See* J.A. 77–78. Mr. Higgins proffered Mr. Reesman to "testify that he prepared the Douglas factor analysis based on conversations with Mr. Ambrose, Ms. Andrea Baumer, Ms. Jennifer Fann, and Mr. Goode . . . under the impression and belief that *all of the aforementioned had filed adverse reports against*" Mr. Higgins. *Id.* (emphasis added). To the extent that Mr. Higgins's proffer of Mr. Reesman's testimony implicitly addresses institutional motive to retaliate, it appears to rely on the animus of other VAMC employees to establish such a motive, rather than any firsthand knowledge unique to Mr. Reesman. *See id.* Indeed, Mr. Higgins's proffer recognizes that though Mr. Reesman proposed Mr. Higgins's removal, Mr. Reesman had "no substantial observation of," and had "limited

interaction with," Mr. Higgins.    J.A. 77.    Mr. Higgins clearly believed that the witnesses Mr. Reesman consulted had direct knowledge of (and perhaps participated in fostering) an institutional motive to retaliate against him. Nonetheless, Mr. Higgins elected not to proffer any of them to provide first-hand testimony regarding an institutional motive to retaliate.  *See* J.A. 74–81.

Because Mr. Higgins had identified, but chose not to call, any of the VAMC employees who he asserted had filed adverse reports against him, and Mr. Higgins did not explicitly proffer Mr. Reesman to testify regarding an institutional motive to retaliate, we conclude that the Administrative Judge did not abuse his discretion in excluding Mr. Reesman's testimony.

Turning to the Administrative Judge's exclusion of Ms. Depperman, Mr. Higgins argues that her excluded testimony would have "provid[ed] *further circumstantial evidence* of an institutional motive to retaliate," by nature of her position as "an Agency official who influenced the decision to remove."  Appellant's Br. 51–52 (emphasis added). Ms. Depperman was the VAMC's Chief Financial Officer and Mr. Reesman's acting supervisor from April to May 2017.  In describing the value of Ms. Depperman's testimony as providing "further circumstantial evidence," however, Mr. Higgins suggests that her testimony was repetitious of other proffered testimony.  Indeed, the Administrative Judge permitted Mr. Higgins to testify and call eleven additional witnesses to testify at the hearing, and some of Ms. Depperman's proffered topics overlapped with those of other witnesses.  *E.g.*, J.A. 78 (Mr. Dunning); J.A. 79 (Mr. Belmont).  As with Mr. Reesman's testimony, we thus conclude that the Administrative Judge did not abuse his discretion by excluding Ms. Depperman's testimony as "irrelevant and/or redundant." J.A. 108.

## CONCLUSION

We have considered Mr. Higgins's remaining arguments and do not find them persuasive. For the foregoing reasons, we affirm the Board's decision.

## **AFFIRMED**

## COSTS

No costs.