NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**AMANDA MOJDEH RAISZADEH,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

_____

2023-2409

_____

Petition for review of the Merit Systems Protection Board in No. DC-1221-12-0452-B-1.

_____

Decided: November 7, 2025

_____

AMANDA MOJDEH RAISZADEH, Centreville, VA, pro se.

JANA MOSES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY.

_____

Before LOURIE and STOLL, *Circuit Judges*, and CHUN, *District Judge*.[1]

PER CURIAM.

Amanda Mojdeh Raiszadeh appeals from a final decision of the Merit Systems Protection Board ("the Board") affirming the denial of her individual right of action appeal against the Department of Homeland Security ("DHS"). *Raiszadeh v. Dep't of Homeland Sec.*, DC-1221-12-0452-B-1 (M.S.P.B. July 20, 2023) ("*Final Decision*"), S.A. 1–7; *see also* S.A. 8–31 (Administrative Judge's Initial Decision adopted by the Board in its *Final Decision*). For the following reasons, we affirm.

## BACKGROUND

In April 2007, DHS hired Raiszadeh as a supervisory employee subject to a one-year probationary period. S.A. 8–9. During that time, her subordinates lodged multiple complaints about her management style and actions, which were summarized by the local union in written notes titled "Draft Focus Group Meeting Notes" ("Draft Notes").[2] *See id.* at 62–67. In November 2007, Raiszadeh and a colleague met with the Office of Inspector General ("OIG") to discuss how they had discovered an unsecured safe containing sensitive material. *Id.* at 33. Later, in January 2008, Raiszadeh officially memorialized that issue by sending an email to OIG. *Id.* In December 2007, before her probation ended, Raiszadeh received an "unsatisfactory" performance rating, followed by a February 2008 termination notice based on her poor performance, delivered by her direct

---

[1]    Honorable John H. Chun, Judge, United States District Court for the Western District of Washington, sitting by designation.

[2]    The Draft Notes were introduced as "Agency Exhibit No. 5." *See* S.A. 199 (Raiszadeh's objections to DHS's prehearing submissions).

supervisor, Susan Dibbons. *Id.* at 9–10. She resigned before the termination took effect. *Id.*

In 2011, Raiszadeh filed a whistleblower retaliation complaint with the Office of Special Counsel ("OSC"), alleging that her negative performance rating and subsequent termination decision were reprisals for her OIG disclosure regarding the unsecured safe. *Id.* at 33. The administrative judge ("AJ") initially denied corrective action, finding that Raiszadeh could not have had a reasonable belief that her disclosure was protected. *Id.* at 42–59. Raiszadeh petitioned for review; the Board disagreed with the AJ and found that Raiszadeh had successfully carried her burden to show that she had made a protected disclosure and that it contributed to her termination. *Id.* at 32–41. The Board then remanded for the AJ to determine whether DHS could prove by clear and convincing evidence that it would have taken the same actions absent Raiszadeh's protected disclosure. *Id.* at 38.

On remand, the AJ found that DHS met that burden, concluding that DHS would have terminated Raiszadeh regardless of any whistleblowing activity. *Id.* at 24–25. Specifically, the AJ found that Raiszadeh was terminated because of significant performance and communication problems as shown in documented reviews provided by her subordinates and management at DHS and through credible testimony from DHS management and OIG agent Timothy Herlihy. *See id.* at 17–24; *id.* at 25 (concluding the "termination [was] based on the appellant's inability to perform basic job functions and not retaliation for engaging in protected activity"). Raiszadeh again petitioned for review. *Final Decision*, S.A. at 1. After considering the complete record, the Board affirmed the AJ's decision, adopted it as its own, and denied Raiszadeh's petition. *Id.* at 2. In doing so, the Board also rejected Raiszadeh's challenges to the AJ's evidentiary rulings regarding the Draft Notes and other exhibits. *Id.* at 2 n.2.

Raiszadeh appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Raiszadeh challenges the Board's decision on two grounds.  First, she argues that the Board abused its discretion by admitting certain evidence over her objections.  *See* Raiszadeh Op. Br. 8–16.  Second, she contends that the Board's finding that DHS would have terminated her notwithstanding her protected disclosure was not supported by substantial evidence.  *See id.* at 20–42.  We address each issue in turn.

### I

The scope of judicial review of final Board decisions is narrowly defined and limited by statute.  5 U.S.C. § 7703(c); *see also O'Neill v. Off. of Pers. Mgmt.*, 76 F.3d 363, 364 (Fed. Cir. 1996).  We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Higgins v. Dep't of Veterans Affs.*, 955 F.3d 1347, 1353 (Fed. Cir. 2020) (citation modified).

### A

We begin with the evidentiary issue.  Raiszadeh argues that the Board abused its discretion by affirming the AJ's admission of the "Draft Notes" and other exhibits over hearsay and authentication objections.  *See* Raiszadeh Op. Br. 8–16.  We disagree.  "It has long been settled . . . that hearsay evidence may be used in Board proceedings." *Kewley v. Dep't of Health & Hum. Servs.*, 153 F.3d 1357, 1364 (Fed. Cir. 1998) (citing *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1538 (Fed. Cir. 1984)).  "In addition, we have held

that procedural matters such as the admissibility of evidence, including hearsay, fall within the sound discretion of the Board and its AJs." *Id.* (citing *Curtin v. Off. of Pers. Mgmt.,* 846 F.2d 1373, 1378–79 (Fed.Cir.1988)).

Here, the AJ admitted the Draft Notes and other disputed exhibits over hearsay objections because they appeared "relevant" and, as the AJ correctly explained, "hearsay is allowed in these proceedings." S.A. 217; *see Kewley*, 153 F.3d at 1364. Raiszadeh fails to demonstrate how the AJ abused her discretion, and we see no reason to disturb the AJ's evidentiary determinations. *See Curtin*, 846 F.2d at 1378 (explaining that we do not overturn the Board on evidentiary matters "unless an abuse of discretion is clear and is harmful").

While Raiszadeh argues that the Draft Notes should not have been admitted because they are contradicted by other record evidence and that "the AJ was required to make a reasoned [judgment] as to the probative value of the Draft Notes," Raiszadeh Op. Br. 10–14, those arguments go to the evidence's weight, not its admissibility. Raiszadeh admits as much, basing her argument that the Board "erroneously *admitted* into evidence" the Draft Notes, Raiszadeh Op. Br. 8 (emphasis added), primarily on the Board's purported failure to evaluate the "factors [that] affect the *weight* to be accorded to hearsay evidence," *id.* at 13 (emphasis added) (citing *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981)). However, it is not our role to reweigh evidence, and we decline to do so here.[3] *See*

---

[3]    Raiszadeh also argues that the AJ erred by admitting and relying on two other pieces of evidence, Exhibits 3 and 4. Raiszadeh Op. Br. 14–16. Yet, it does not appear that the AJ relied on such exhibits, and even if she did, Raiszadeh cannot prove harmful error given the other substantial evidence supporting the AJ's findings.

*Rickel v. Dep't of the Navy*, 31 F.4th 1358, 1366 (Fed. Cir. 2022).

Even if the AJ had erred in admitting the Draft Notes, any such error was harmless. *See Curtin*, 846 F.2d at 1379 ("If an abuse of discretion did occur with respect to the discovery and evidentiary rulings, in order for petitioner to prevail on these issues he must prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of the case." (citations omitted)). The Draft Notes were merely cumulative of other, independent evidence reflecting the same employee complaints and management concerns about Raiszadeh's performance. *See* S.A. 1680–1681 (Dibbins testifying that by the time she received the Draft Notes, she had already heard several complaints that were listed in the Draft Notes); *see also id.* at 558, 1498, 1707.

Finally, to the extent that Raiszadeh argues that the Draft Notes, as admitted hearsay evidence, do not constitute substantial evidence supporting the Board's findings, we address those arguments in the following section.

B

Raiszadeh next argues that the Board's finding that DHS met its burden to prove that it would have terminated her regardless of her protected disclosure was not supported by substantial evidence. Again, we disagree.

The Whistleblower Protection Act ("WPA") "prohibits any federal agency from taking, failing to take, or threatening to take or fail to take, any personnel action" against an employee for making a protected disclosure. *Fellhoelter v. Dep't of Agric.*, 568 F.3d 965, 970 (Fed. Cir. 2009) (citing 5 U.S.C. § 2302(b)(8)). To make a *prima facie* case of retaliation under the WPA, an employee must show that she made a protected disclosure and that it contributed to an adverse personnel action. *Id.* (citing 5 U.S.C. § 1221(e)(1). The agency may rebut that *prima facie* case by proving,

with clear and convincing evidence, that it would have taken the same action absent the disclosure. *Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1374 (Fed. Cir. 2012) (citing 5 U.S.C. § 1221(e)).

To determine whether DHS would have taken the same adverse action absent the protected disclosure, we evaluate three nonexclusive factors known as the *Carr* factors. *See Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The three nonexclusive factors are:

> [(1)] [T]he strength of the agency's evidence in support of its personnel action; [(2)] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [(3)] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Id.* The *Carr* factors do not impose any affirmative duty on DHS to produce evidence for each factor, but are merely guiding considerations in determining whether DHS has met its burden. *Whitmore*, 680 F.3d at 1374.

As a threshold matter, Raiszadeh argues that the Draft Notes, as hearsay evidence, cannot constitute substantial evidence. *See* Raiszadeh Op. Br. 8–14. That is incorrect. *See Sanders v. U.S. Postal Serv.*, 801 F.2d 1328, 1331 (Fed. Cir. 1986) ("[H]earsay evidence may be substantial evidence in an administrative proceeding if there are circumstances which give it credibility and probative value to a reasonable mind." (citations omitted)). The Draft Notes, as exemplified by the AJ's *Carr* factor analysis, *see* S.A. 17–25, are highly probative of the extent and nature of employee concerns about Raiszadeh's supervisory conduct during her rating period, which also falls within her probationary period. In addition, other record evidence substantiates the Draft Note's probative value and reinforces its credibility. The AJ explained that DHS management, including Dibbins and District Director Gregory Christian,

received the Draft Notes contemporaneously in October 2007 and that both had independently learned of similar employee complaints. *See* S.A. 1680–1681, 1862–1863. Under such circumstances, the Draft Notes may and, as discussed below, did constitute substantial evidence because it bore sufficient indicia of probative value and reliability. *See Sanders*, 801 F.2d at 1331.

Moving to the first *Carr* factor, the strength of the agency's evidence supporting the personnel action, the AJ found "strong evidence" of Raiszadeh's managerial deficiencies. *See* S.A. 17–20. The AJ pointed to numerous complaints from veteran employees describing Raiszadeh as "abrasive, overbearing[,] and rude," *id.* at 17, and attributing record-low morale to her "insensitive and heavy-handed" supervision, *id.* at 18. The AJ specifically credited Dibbins's evaluations, which noted that Raiszadeh was "reactionary rather than composed," that her unit suffered from "significant disintegration of cohesion," and that she needed additional training in written communication. *Id.* at 19–20. Those findings constitute substantial evidence supporting the AJ's conclusion that the record strongly supported DHS's decision to terminate Raiszadeh during her probation for performance-related reasons.

As to the second *Carr* factor, the AJ found that DHS's motive to retaliate was weak. *See* S.A. 20–24. Crediting Dibbins's testimony, the AJ determined that Dibbins was unaware of Raiszadeh's protected disclosure to the OIG until 2011 or 2012, years after the termination. *Id.* at 21. The AJ described Dibbins as a "direct, straightforward witness" with no indication of "subterfuge in her testimony." *Id.* In contrast, the AJ found Raiszadeh's demeanor during her testimony "evasive, chaotic[,] and at times, bordering on incoherent," and highlighted inconsistencies in her testimonies from different proceedings regarding the timing of her disclosure to OIG, deeming her explanations implausible. *Id.* at 23. Further, the AJ credited OIG agent Herlihy's testimony that it was "highly unlikely" any meeting

occurred in November 2007 between Raiszadeh, her colleague, and OIG, undermining Raiszadeh's timeline. *Id.* at 22. Taken together, this demonstrates substantial evidence of no retaliatory motive on DHS's part.

Raiszadeh does not specifically address individual *Carr* factors one or two, but rather challenges the AJ's weighing of the evidence, *see* Raiszadeh Op. Br. 16–20, and her witness credibility determinations, *see id.* at 21–30. Those arguments misapprehend our scope of review and divert our attention from the *Carr* analysis. The AJ carefully considered the record evidence, made reasonable credibility determinations, and determined that DHS would have terminated Raiszadeh absent her protected actions by clear and convincing evidence. Again, it is not our role to reweigh evidence, and we decline to do so here. *See Rickel*, 31 F.4th at 1366. Furthermore, the AJ's credibility determinations are "virtually unreviewable." *Henry v. Dep't of the Navy*, 902 F.2d 949, 953 (Fed. Cir. 1990) (citation altered).

As for the third *Carr* factor, which considers whether the agency treated similarly situated employees differently, the AJ found no relevant comparator evidence. S.A. 24 n.5. Thus, the AJ properly excluded this factor from the *Carr* analysis. *See Whitmore*, 680 F.3d at 1374 ("[T]he absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis."). Raiszadeh contends that the "AJ has completely ignored [her] evidence that she was treated less favorably than several similarly situated mangers." Raiszadeh Op. Br. 30. The AJ did not ignore evidence but rather found that there was a "lack of evidence regarding similarly situated employees." S.A. 24 n.5. DHS did not offer evidence of supervisory employees that were terminated for similar reasons. *Id.* And while Raiszadeh offered two comparators, they were not terminated by the agency, nor were they similarly situated. *See* Raiszadeh Op. Br. 30–33. Specifically, Raiszadeh does not show that either of her proposed

comparators exhibited a pattern of performance issues during their probationary periods as she did; Raiszadeh only proffers that the supposed comparators were involved in one-off incidents or that they had received generalized feedback on their management or writing skills. *Id.* Thus, the AJ properly discarded this factor from the analysis. *See Whitmore*, 680 F.3d at 1374.

In sum, the AJ's analysis of the *Carr* factors was supported by substantial evidence; DHS's action rested on ample evidence of Raiszadeh's poor performance, not retaliatory animus.

## CONCLUSION

We have considered Raiszadeh's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.

## **AFFIRMED**

### COSTS

No costs.